**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Swapna JAIN, Acquittee–Appellant.**

No. 98–2203.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 26, 1998.

Decided April 20, 1999.

Stephen A. Ingraham (argued), Thomas P. Schneider, Office of United States Attorney, Milwaukee, WI, for Plaintiff–Appellee.

Douglas M. Bihler (argued), Bihler & Kuehl, Milwaukee, WI, for Acquitee–Appellant.

Before EASTERBROOK, DIANE P. WOOD, and EVANS, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

This case tests the limits of a district court's authority to set conditions of release for a criminal defendant found not guilty by reason of insanity. A federal statute, 42 U.S.C. § 4243, spells out a particular drill for the district court to follow after such a finding. In Dr. Swapna Jain's case, however, after she had been tried on charges that she transmitted threats of violence through interstate commerce and was found not guilty by reason of insanity, the district court deviated from the prescribed sequence. Furthermore, the court imposed certain conditions on her release that she claims were not authorized by the statute. Jain also argues that even if the controversial conditions were within the court's power, the evidence in the record did not support imposing them in her case. For the reasons set out below, we affirm the court's order of conditional release.

I

Jain received her medical degree from the Medical College of Wisconsin in 1994 and soon thereafter entered a residency in anaesthesiology. She was forced to abandon the program in 1996, however, when she began to exhibit symptoms of mental illness. Jain suffers from paranoid schizophrenia, a chronic mental illness that causes delusions and auditory hallucinations. As a result of her illness, Jain believed that an organization she called "the guild" was spying on her and manipulating her with mind-control devices. The guild's sinister activities included stealing things from Jain's apartment, planting "voice machines" in her apartment and car that taunted her 24 hours a day, installing "switches" in her apartment that could control her thoughts and actions, watching her while she undressed, and hiring investigators to follow her. Jain also believed that the Medical College belonged to the guild and that several members of the school's faculty directed its actions against her.

As Jain's illness progressed, she became increasingly desperate in her efforts to escape the guild's grasp. In July 1997, she began to leave threatening messages on the answering machines of various employees of the Medical College whom she

believed to be members of the guild. In the messages, Jain accused the guild of trying to kill her or, at least, to drive her crazy. She warned that if the guild would not leave her alone, she would be forced to kill either herself or them. She threatened to bomb the Medical College and to shoot individual faculty members. The threats continued, by telephone and mail, until October 8, 1997, when Jain was arrested at the office of one of the deans of the Medical College. She was charged with transmitting through interstate commerce threats to injure another person and to damage or destroy a building in violation of 18 U.S.C. §§ 844(e) and 875(c).

At Jain's detention hearing two days later, counsel for both sides expressed concern that she might not be competent to stand trial. The court ordered psychiatric examinations and held a competency hearing as required by 18 U.S.C. §§ 4241(b) and (c). Based on that record, the court found Jain incompetent to stand trial and committed her to the custody of the Attorney General for treatment pursuant to § 4241(d). During her commitment, Jain was treated with a regimen of anti-psychotic medication that successfully controlled her illness. In January 1998, Jain's physicians at the Carswell Federal Medical Center informed the court that her illness had been controlled to the point that she could stand trial. Following the procedures in § 4241(e), the court made a new finding that Jain was now competent to stand trial. It ordered her to be discharged from the mental hospital, and it set a trial date. Jain then filed a Notice of Intent to Rely Upon the Defense of Insanity as required by Federal Rule of Criminal Procedure 12.2.

Before trial, Jain agreed to a plea agreement under which she admitted the factual basis for the charges against her but reserved the right to present her insanity defense to the court. The court heard evidence on her insanity defense on April 13, 1998. After considering reports from the court-ordered examinations, the court decided that Jain indeed was suffering from a severe mental illness at the time of her offenses that prevented her from appreciating the nature and quality or the wrongfulness of her acts. In other words, Jain was adjudicated not guilty, but only by reason of insanity.

The federal criminal code provides detailed instructions for how a district court should proceed after a criminal defendant has been found not guilty by reason of insanity of an offense involving bodily injury to another person or serious damage to property. First, the person in question must be committed to a suitable treatment facility pending further mental examinations. 18 U.S.C. § 4243(a). The court must then order a psychiatric or psychological examination of the person, the results of which must be reported to the court. *Id.* § 4243(b). Next, within 40 days of the insanity acquittal, the court must hold a hearing at which it must decide whether the individual can be released without creating a substantial risk of bodily injury to another person or serious damage to the property of another. *Id.* § 4243(c). The former defendant bears the burden of proof at the hearing to show that she is entitled to release. *Id.* § 4243(d). If the court concludes that she cannot be released without posing such a danger, then § 4243(e) provides that "the court shall commit the person to the custody of the Attorney General."

The person will remain in the custody of the Attorney General until the director of the facility in which she is being hospitalized certifies that she "has recovered from [her] mental disease or defect to such an extent that [her] release, or [her] conditional release under a prescribed regimen of medical, psychiatric, or psychological care or treatment" would *no longer pose a* risk of danger and sends a certificate to that effect to the court that ordered the commitment. *Id.* § 4243(f). The court then may order the discharge of the person or, if it wishes to do so, or if the government so moves, it must hold a dis-

charge hearing. *Id.* After that hearing, the court may either order an unconditional discharge, or it may issue

> (A) [an] order that [the person] be conditionally discharged under a prescribed regimen of medical, psychiatric, or psychological care or treatment that has been prepared for him, that has been certified to the court as appropriate by the director of the facility in which he is committed, and that has been found by the court to be appropriate; and

> (B) order, as an explicit condition of release, that he comply with the prescribed regimen of medical, psychiatric, or psychological care or treatment.

§ 4243(f)(2). The statute also contemplates on-going monitoring of the person, both by permitting the court to modify or eliminate its order after the hearing, § 4243(f) (last sentence), and by providing for the revocation of conditional discharge, § 4243(g).

The problem now before us arose because Jain's case did not follow this procedure to the letter. After she was found not guilty by reason of insanity, she was committed to Carswell for further mental examination and the development of a treatment plan pursuant to § 4243(a). The court ordered the requisite reports as provided by § 4243(b) and then held a commitment hearing to determine whether Jain could be safely released. Although it seems that the latter proceeding could not have been anything other than a § 4243(c) commitment hearing, the parties and the district court treated it as a discharge hearing under § 4243(f). Accordingly, instead of inquiring whether Jain could be released outright without creating a substantial risk of danger to persons or property (the only inquiry provided for under § 4243(c)), the court jumped right to the question whether she could be released *on conditions* without posing such a danger. The latter is an option only under § 4243(f).

Working from the standards in § 4243(f), the court found that Jain had met her burden of proving by clear and convincing evidence that she could be released without posing a substantial risk of bodily harm or serious damage to property—but only under certain conditions. It then issued an order detailing those conditions. They include the requirements that Jain continue with the treatment regimen already in place and continue to live with her parents so that they can help monitor her progress. The order also imposes the following additional conditions, which the government had requested, but which the Carswell physicians had not addressed in their report:

> (1) that Jain reimburse the Clerk of Court for the costs of her appointed counsel,

> (2) that she obtain the court's permission before returning to a career in health care,

> (3) that she inform any potential employer that she was acquitted of the alleged offenses, but only by reason of insanity,

> (4) that she refrain from contacting the Medical College and abide by an existing injunction requiring her to stay away from the University of California Medical School campuses, and

> (5) that she seek employment under the supervision of a probation officer and obtain his approval before accepting any employment.

## II

On appeal, Jain asks us to find that the district court exceeded its authority to impose conditions of release under § 4243(f) when it imposed the latter five conditions. But, as we pointed out at oral argument, there is a preliminary question that must be answered: did the proceedings in the district court ever reach the § 4243(f) stage, or was the court in substance handling a § 4243(c) matter? The distinction is not without consequence. Indeed, the Fourth Circuit has recently vacated an order of conditional release issued by a

district court relying on § 4243(f) on the ground that the proceedings there had reached only the § 4243(e) stage (disposition after a § 4243(c) hearing). See *United States v. Baker*, 155 F.3d 392, 394–95 (4th Cir.1998). In so holding, the court explained that, "a subsection (f) discharge hearing simply cannot, as a matter of the statute's construction, take place until after a subsection (e) disposition of commitment has occurred." *Id.* at 395. Because there is no provision for a conditional release prior to § 4243(f), the court continued, a district court exceeds its authority by granting one as a disposition under § 4243(e). Instead, it must release the defendant unconditionally or not at all. *Id.* at 396.

■ There is a clear logic to the progression established by the statute, which is why it is at least troublesome that the district court did not follow it more scrupulously. The question posed by the § 4243(c) hearing is a simple one: can the person be released outright? If the answer is yes, that is the end of things; the statute makes no provision for continued monitoring or revocation of release. If the answer is no, a far more elaborate set of procedures is triggered. First, § 4243(e) instructs that the court "shall commit the person to the custody of the Attorney General." Second, all further consideration of either conditional or unconditional release occurs under the professional supervision of the director of the custodial facility. Finally, a conditional discharge is subject to revocation under § 4243(g). Blurring the distinction between a hearing under § 4243(c) and a hearing under § 4243(f) risks shifting the primary responsibility for the evaluation of the person's condition from the director of the facility to the court in any case where a clear case for release cannot be made.

As in *Baker*, the district court here bypassed several statutory requirements. Its finding that conditional release was the appropriate disposition for Jain implicitly means that it concluded that she could *not* be released unconditionally without a substantial risk to persons or property. Yet such a finding should have resulted in her commitment to the custody of the Attorney General, at least for enough time to permit the director of the facility where she was housed to develop a treatment regimen suitable for her release and to certify the suitability of this regimen to the court. Had Jain objected or claimed that she was entitled to an unconditional discharge, then we would need to decide whether we agreed with the *Baker* court that the only remedy for disregarding the statutory drill was a remand. She did not object, however, and her appeal does not challenge the part of the district court's order requiring her to adhere to the treatment regimen and to live with her parents. We therefore do not need to decide whether a § 4243(c) hearing can ever be a functional substitute for the fuller set of procedures required by the statute, depending on what actually took place, and we proceed to Jain's arguments about the additional five conditions the court imposed upon her.

### III

■ Jain's first argument presents a question of statutory interpretation that we review *de novo*. *United States v. Shriver*, 989 F.2d 898, 901 (7th Cir.1992). She contends that whenever a criminal defendant is found not guilty by reason of insanity, the outer limit of the district court's powers to impose conditions upon her release is measured by § 4243(f). That statute, she asserts, permits only conditions that are directly related to the treatment of the person's mental illness. Because several of the requirements imposed as conditions of her release were not designed to treat her illness but rather to protect the public, she argues, they fall beyond the scope of the district court's authority and they must be set aside.

■ As an initial matter, we find Jain's argument about the source of the court's power to impose conditions to be

too restrictive. Nothing in § 4243 purports to repeal other statutes that entitle district courts to issue orders ancillary to the disposition of cases before them. In fact, § 4243(f)(2)(B) expressly states that the prescribed regimen may be ordered as "*an* explicit condition of release," with the use of the indefinite article suggesting that other conditions may be imposed as well. Jain also suggests that the rules governing criminal sentences compel the conclusion here that the district court is limited to those conditions specifically listed in the statute when drafting a release order. See *United States v. Sotelo*, 94 F.3d 1037, 1040 (7th Cir.1996) (holding that district courts are not permitted to impose criminal sentences that are not specifically authorized by statute). But it is well established that the principles of criminal sentencing do not apply when a defendant has been acquitted by reason of insanity. *Jones v. United States*, 463 U.S. 354, 369, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983). Given that "it is impossible to predict how long it will take for any given individual to recover—or indeed whether he ever will recover," district courts generally are accorded great latitude when determining whether a mentally ill defendant is ready to be released and under what conditions. *Id.* at 367. Thus, our inquiry must look more broadly to see if any statute permitted the condition in question, not just § 4243.

Perhaps the most important shortcoming of Jain's interpretation of § 4243(f) is the fact that it disregards the role that subsection plays in the statute as a whole. The basic inquiry the court is making throughout § 4243 is whether release of the person would create a substantial risk of bodily injury to another person or serious damage to the property of another— briefly put, whether the public needs protection from the danger posed by the person's mental illness. See *United States v. Clark*, 893 F.2d 1277, 1282 (11th Cir.1990) (noting "the trial court's awesome responsibility to the public to ensure that a clinical patient's release is safe"); *United*

*States v. Johnson*, 824 F.Supp. 198, 199 (M.D.Ala.1993). In light of that overriding purpose, it would be inappropriate to adopt a crabbed reading of the content of the "prescribed regimen of medical, psychiatric, or psychological care or treatment" that may be imposed as a condition of release.

■ This is not to say that a court's power to impose conditions under § 4243(f) extends beyond precautions related somehow to the mental illness in question, nor does it mean that the court could commit her for a mental illness that posed no danger. *Foucha v. Louisiana*, 504 U.S. 71, 76, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992); *United States v. Murdoch*, 98 F.3d 472, 476 (9th Cir.1996). The court is required to consider the relationship between the acquittee's mental illness and the potential risk to society of releasing her from custody. In many cases, the treating facility's recommendations appropriately will determine the conditions of release in their entirety. But the whole idea of a hearing on conditional release implies that the opinion of the director of the treating facility is not necessarily the last word; otherwise, the statute would have left such decisions entirely in the director's hands. Other experts might testify, and the court would be entitled to consider any relevant lay testimony. In the end, therefore, the court is entitled to spell out the prescribed regimen that it has found will be appropriate, supplementing or clarifying the recommendations of the director if necessary.

Accordingly, we find that a district court does not overstep its authority by establishing conditions of release relating to an insanity acquittee's dangerousness that are not specifically included in the "prescribed regimen" prepared by the treating facility. This leads to the question whether the conditions imposed in this case were supported by the record.

## IV

Jain argues that even if the district court has the authority to impose the type of conditions at issue, it nevertheless abused its discretion in doing so because there is no evidence in the record to suggest that these conditions are reasonably related to a potential danger to other persons or property. We will find that a district court has abused its discretion only if its decision is based on an erroneous conclusion of law, the record contains no evidence on which the decision rationally could have been based, or its findings of fact are clearly erroneous. *Klonowski v. International Armament Corp.*, 17 F.3d 992, 995 (7th Cir.1994). None of these circumstances is present here.

We begin with Jain's assertion that the court should not have ordered her to reimburse the Clerk of Court for the costs of her appointed counsel. We do not disagree with Jain's observation that this condition has no apparent relationship to either the treatment of her mental illness or her potential dangerousness. However, even if this logic does lead to the conclusion that reimbursement for costs is not authorized under § 4243(f), there is an independent basis for the court's authority to order reimbursement under 18 U.S.C. § 3006A(f). Accordingly, we cannot find this portion of the court's order to be an abuse of discretion.

Of greater concern to Jain are the court's restrictions on her ability to pursue a career in health care in the future—namely, the requirements that she conduct her job search under the guidance of her parole officer, obtain the court's permission before accepting a position in health care, and inform any potential employer about the circumstances surrounding this prosecution and acquittal. Undoubtedly, Jain is correct in her belief that these conditions will limit her ability to find work in the health care field. The district court found such limitations necessary because health care professionals occupy unique positions of public trust from which Jain could cause tremendous harm were she to suffer a relapse. This conclusion, standing alone, is eminently sensible. These three conditions also ensure that the court and potential employers will be informed about Jain's circumstances. (Indeed, the court may have found worrisome Jain's implicit assertion that she had the right to conceal this highly relevant history from a potential employer.)

The court's own interest in current information is easily supported by § 4243, both in the language of the final sentence of § 4243(f) permitting the court to modify or eliminate the prescribed regimen, and in the language of § 4243(g) permitting the court "upon other probable cause" to revoke a conditional discharge. Nothing in § 4243(f) forbids this kind of ancillary condition designed to ensure that the court may carry out its responsibilities under the statute. As the district court judge explained,

I do not believe that the brief period that has expired from November of last year to today is enough of a track record for this court to simply lay down some very limited conditions in the hopes that the medication and the treatment will continue to maintain the defendant in the condition she's in.

It's also clear from the testimony of [her examining physicians] that this is a condition that she's likely to have to deal with for the rest of her life. And I think that as such we have to be certain that at least during this trial period that what we've seen, is something that we can expect to continue.

Finally, Jain challenges the condition requiring her to abide by a preexisting restraining order relating to Jain's involvement with the University of California. This condition, as with the one restricting her contact with the Medical College of Wisconsin, is drafted to permit contact when necessary for Jain to receive medical treatment or to obtain references and transcripts, but to prohibit

contact of the sort that has led to violent outbursts in the past. This requirement, which merely reiterates that Jain must fulfill a preexisting legal obligation—the validity of which did not depend on § 4243(f)—did not go beyond the bounds of the court's authority either.

We therefore AFFIRM the order of the district court.