# United States Court of Appeals
## For the First Circuit

---

Nos. 08-1508
     08-1509

JOHN LEONARD ECKER,

Plaintiff, Appellee/Cross-Appellant,

v.

UNITED STATES OF AMERICA,

Defendant, Appellant/Cross-Appellee.

---

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

---

Before

Torruella, Stahl, and Howard,
Circuit Judges.

---

Kirby A. Heller, Attorney, U.S. Department of Justice, with whom Michael J. Sullivan, United States Attorney, and Mary Elizabeth Carmody and Mark T. Quinlivan, Assistant United States Attorneys, were on brief, for appellant.
Neil T. Smith, by Appointment of the Court, with whom Joseph F. Savage, Jr., and Goodwin Proctor LLP were on brief, for appellee.

---

August 3, 2009

---

**STAHL, <u>Circuit Judge</u>.** In this appeal, we are required to resolve the fate of John L. Ecker, who was charged with a federal crime and detained in 1989 and subsequently civilly committed in 1993, pursuant to 18 U.S.C. § 4246(d). For twenty years he has remained held in a federal mental health facility and has never been tried or convicted of the charged crime. The only federal charge against him, one count of being a felon in possession of a firearm, was dismissed in 2006.

The Warden of the federal mental health facility where Ecker is currently housed has recommended that he be conditionally released. Based on this recommendation, the district court ordered that Ecker be conditionally released from federal custody and transferred to the custody of the Commonwealth of Massachusetts for continued mental health care and treatment.

Notwithstanding the Warden's recommendation, the government has sought to maintain Ecker under federal custody, arguing that he remains a danger to the general public and that the Commonwealth has repeatedly refused to voluntarily accept the transfer of Ecker to its care. Therefore, the government asks us, inter alia, to remand the case to the district court for further deliberation under the federal civil commitment statute, 18 U.S.C. § 4246. In a cross-appeal, Ecker requests that this court reverse the district court and order his release outright, without conditions. We decline both requests and instead affirm the

district court's careful and diligent disposition of this complex case and remand to the district court solely for clarification and updating of the terms of Ecker's conditional release.

## I. Background

Over the course of Ecker's twenty years in the federal system, his case has been reviewed by multiple district and magistrate judges in Minnesota and Massachusetts, as well as the Eighth Circuit, and this court. See, e.g., United States v. Ecker, No. 3-93-298, 2001 WL 36044433 (D. Minn. July, 20, 2001); United States v. Ecker, 424 F. Supp. 2d 267 (D. Mass. 2006); United States v. Ecker, 489 F. Supp. 2d 130 (D. Mass. 2007); United States v. Ecker, 527 F. Supp. 2d 199 (D. Mass. 2007); United States v. Ecker, 538 F. Supp. 2d 331 (D. Mass. 2008); United States v. Ecker, 30 F.3d 966 (8th Cir. 1994); United States v. Ecker, 78 F.3d 726 (1st Cir. 1996). Given this well-documented record, we will not relate in extensive detail the legal twists and turns this case has taken. For our purposes the important facts are as follows.

In 1989, Ecker was charged as a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922 and 924, and indicted in the District of Massachusetts where the charged crime was alleged to have occurred. However, due to his mental condition he was twice found incompetent to stand trial (in 1992 and again in 1993), and as a result, was temporarily committed to the custody of the Attorney General for hospitalization pursuant to 18 U.S.C. §

-3-

4241(d). In June 1993, Ecker was civilly committed under 18 U.S.C. § 4246, based on a court finding that he was mentally ill and dangerous. That civil commitment was entered in the District of Minnesota because at the time Ecker was held in the Federal Medical Center ("FMC") in Rochester, Minnesota.[1]

In 2001, after twelve years of detention under the civil commitment statute, Ecker filed a motion in the District of Minnesota requesting that his competency to stand trial be reevaluated. In response, the District of Minnesota elected to transfer the civil commitment case to the District of Massachusetts for further evaluation. This order was based on equitable considerations including that Ecker was a Massachusetts resident; his family was located in Massachusetts and hoped to be involved in his care and legal proceedings; the criminal charge against him was pending in the District of Massachusetts; and Ecker was then confined at the Federal Medical Center in Devens, Massachusetts. The Minnesota court concluded that "unique circumstances not considered by Congress mandate that this Court relinquish jurisdiction over any ongoing competency proceedings in favor of the District of Massachusetts." Ecker, 2001 WL 36044433 at *1.

---

[1]The civil commitment statute states that such a proceeding is to be instituted in "the district in which the person is confined." 18 U.S.C. § 4246(a). The District of Minnesota's jurisdiction over the civil commitment was based purely on Ecker's detention at FMC-Rochester, not on any Minnesota connection to the criminal case against him.

Following the transfer of the civil case to the District of Massachusetts, there were long periods of inaction in both the criminal and civil cases against Ecker. Meanwhile, Ecker remained in federal detention. In 2005, the District of Massachusetts reassigned the civil and criminal cases to Judge Gorton. Since then, the court has proactively sought to resolve this case in a safe and fair manner, holding frequent status conferences, appointing a guardian ad litem for Ecker, seeking written and oral input from the federal mental health professionals involved in Ecker's care, encouraging the federal government and the Commonwealth to resolve Ecker's fate through negotiations, and issuing a series of orders intended to move the parties toward a resolution.

In 2006, on Ecker's motion, the district court dismissed the criminal indictment against him because Ecker's "pretrial commitment for a term longer than the 15-year mandatory minimum sentence which he would be required to serve if convicted is unreasonable and therefore infringes upon his rights under the Fifth Amendment to the United States Constitution." Ecker, 424 F. Supp. 2d at 270. In other words, the indictment was dismissed because Ecker had already spent more than 15 years in federal detention, without a determination as to his guilt or innocence, which surpassed the mandatory minimum for the charged crime. The United States did not appeal the district court's dismissal of the

-5-

indictment. Following the dismissal, the criminal docket was closed and Ecker remained in federal custody under the terms of his civil commitment. By that time, the Bureau of Prisons had moved Ecker from the FMC in Devens, Massachusetts to a new Federal Medical Center located in Springfield, Missouri ("FMC-Springfield").

In April 2007, the district court considered a renewed motion by Ecker that he be transferred from federal custody to the custody of the Massachusetts Department of Mental Health for continued care. As Ecker noted in his motion, the federal civil commitment statute recognizes that care of the mentally ill has historically been the province of the states, and as a result requires the federal government to "exert all reasonable efforts to cause [the relevant] State to assume . . . responsibility" for the custody, care, and treatment of the committed person. 18 U.S.C. § 4246(d). In considering Ecker's motion, the district court found that the federal government had failed to meet its obligation of exerting all reasonable efforts to transfer custody to the Commonwealth: "[T]he Court is distressed and dissatisfied by the lack of effort on the part of the Attorney General to cause the Commonwealth to assume responsibility for Ecker." Ecker, 489 F. Supp. 2d at 136. As a result, the district court ordered the government to report back in six months identifying "all reasonable efforts exerted to cause the Commonwealth of Massachusetts to

assume custody of Ecker." Id. at 137. The court specified that the government should pursue options outlined in the statute at 18 U.S.C. § 4247(i), including entering into a contractual relationship with the Commonwealth or a private agency for Ecker's care and making an affirmative application for Ecker's civil commitment under the Massachusetts mental health statute. Id. at 137-38.

In the same April 2007 order, the district court rejected the government's argument that the District of Massachusetts had no jurisdiction over Ecker's civil commitment case because venue was improper. Id. at 133-35. The government for the first time had argued that 18 U.S.C. § 4246(d) provided exclusive jurisdiction in the court in which the civil commitment order was initially entered, in this case the District of Minnesota. It bears importance to mention that though the original transfer took place in 2001, the government did not raise the issue of improper venue until 2006, after Judge Gorton ordered the dismissal of the indictment.

In October 2007, the Warden of FMC-Springfield, where Ecker was detained, submitted a letter to the district court recommending Ecker for conditional release. This recommendation was based on Ecker's most recent Risk Assessment Report ("RAR"), completed by the FMC medical staff, a copy of which was attached to the Warden's letter. Based on this recommendation for conditional

release, the district court issued an order in November 2007, requiring the Warden to submit a proposed plan for Ecker's conditional release. See Ecker, 527 F. Supp. 2d at 204.

In January 2008, having received the Warden's proposed plan of conditional release, the district court issued its final substantive order in the case. See Ecker, 538 F. Supp. 2d at 331. First, the court summarized the Warden's proposed plan as follows:

> 1. Ecker is to spend at least six months in the general population at MCFP Springfield.
>
> 2. Ecker is to be transferred to a facility operated by the Massachusetts Department of Mental Health ("DMH"), most likely the Worcester State Hospital ("WSH").
>
> 3. During the time that he is housed at WSH, Ecker is to comply with certain specific conditions, including
>
> a. voluntarily to continue his medical treatment,
> b. to refrain from the use of alcohol or illegal drugs,
> c. to abstain from owning or possessing firearms,
> d. to abstain from any contact with previously identified female victims of unwanted attention, etc.
>
> 4. For an indefinite period of time following his release from federal custody, the United States Probation Department is to assist the DMH in monitoring his compliance with all conditions of his release.
>
> 5. If at any time Mr. Ecker violates the conditions of his release, he is to be returned to federal custody.

Id. at 333.  The court then determined that it would use the Warden's submitted plan as "a basis for its order of conditional release," id., but with two significant modifications.  First, the court ordered that Ecker's transitional time in the general population at FMC-Springfield could not exceed six months.  Second, the court ordered that the transfer of Ecker from federal to state custody would be final.  "That is, because there are no grounds whatsoever on which the federal government may retain custody of Mr. Ecker, the plan of conditional release may provide no eventuality (short of the commission of a new federal crime) under which Ecker is to be returned to federal custody."  Id. at 334.  The district court explained that, as a result of this decision, "any violation of the reasonable conditions identified by the Warden must carry, as the only consequence, the involuntary commitment to a state mental health care facility."  Id.

Of course, the difficulty with the district court's order was that the Commonwealth continued to maintain its refusal to voluntarily accept Ecker into its care.  Further, because the Commonwealth was not a party to the action, the district court could not require the Commonwealth to assume custody.  Thus, the order necessarily contained an element of uncertainty as to how or even whether the transfer would actually take place, as the Commonwealth maintained the prerogative to do nothing in response to Ecker's release from federal custody.

In its final memorandum and order, the district court also made clear that Ecker's conditional release would proceed under 18 U.S.C. § 4246(e), rather than under § 4246(g), as requested by Ecker. Id. at 336. Finally, the court refused the government's request to hold a separate and further hearing regarding the elements of the conditional release plan. Id. at 335-36. Subsequently, the district court issued a stay of Ecker's conditional release, pending appeal. See United States v. Ecker, No. 01-11310-NMG (D. Mass. July 24, 2008).

On appeal, the government raises numerous and sometimes contradictory arguments contesting the district court's attempt to bring about an appropriate resolution to this long-running case. First, the government argues that the district court erred in denying the government's motion to retransfer Ecker's civil case to the District of Minnesota. Second, the government contends that the district court erred in structuring Ecker's conditional release plan by failing to comply with § 4246(e)'s various requirements.

On appeal, Ecker argues that the district court erred by failing to release him outright, without conditions, under the terms of § 4246(g). In the alternative, he argues that the district court properly followed the procedural requirements in ordering his conditional release under § 4246(e). Finally, he contends that the district court properly denied the government's request to transfer the case back to the District of Minnesota and

that the government waived any objection to the transfer "through longstanding acquiescence."

## II. Analysis

### a. Retransfer

The government first contests the district court's denial of its motion to retransfer this case to the District of Minnesota. Here, we only review the district court's denial of the retransfer motion, rather than the initial transfer order issued by the District of Minnesota court.[2] Reviewing the denial for abuse of discretion, see Cimon v. Gaffney, 401 F.3d 1, 6 (1st Cir. 2005), we find none. The district court justifiably declined to "assume an appellate function and review the appropriateness of another district court's transfer order," Ecker, 489 F. Supp. 2d at 134, and concluded that "it is irresponsible to prolong Ecker's already unconscionable stay in legal limbo by re-transferring the matter to the District of Minnesota whence it came more than seven years

---

[2]As we have said, the case was originally transferred to Massachusetts in 2001. The time for the government to contest that initial transfer has long since passed and the proper forum for such a contest was in the Eighth Circuit. "The transfer order is not subject to anything in the nature of direct review by the transferee court or its court of appeals, at least if the change of venue is to a different circuit." 15 Wright, Miller & Cooper, Federal Practice and Procedure § 3846 (3d ed. 2009). If the government opposed the initial transfer, it should have sought a stay from the District of Minnesota or filed a mandamus petition with the Eighth Circuit to halt the transfer. See, e.g., In re Nine Mile Limited, 673 F.2d 242, 243 (8th Cir. 1982). It chose to do neither and so can no longer contest the original transfer.

ago," Ecker, No. 01-11310-NMG, slip op. at 6 (D. Mass. July 24, 2008).

The government argues, however, that retransfer is required because venue is not proper in any district except the District of Minnesota, where Ecker was detained at the time of his civil commitment. The government may be technically correct in this argument, given that transfers are only permitted to "other district[s] or division[s] where [the civil action] might have been brought," 28 U.S.C. § 1404(a), and civil commitment proceedings must be initiated "in the district in which the person is confined," 18 U.S.C. § 4246(a). However, the government has effectively waived this argument by failing to contest venue until 2006, more than five years after the civil case was transferred to the District of Massachusetts. The original transfer was issued by the District of Minnesota in the interest of justice and judicial economy. To upend that transfer now, when the government failed to oppose the original transfer and waited more than five years to request a retransfer,[3] would serve neither of the prudent goals of the initial transfer.[4] As we have observed before in other contexts, "The law ministers to the vigilant not to those who sleep

---

[3]As we point out in the fact section, the government did not raise the venue issue until after the district court granted Ecker's motion to dismiss the indictment against him.

[4]The government only contests whether venue is proper in this case. It does not assert, nor could it, that the District of Massachusetts lacks subject matter jurisdiction.

-12-

upon perceptible rights." <u>Puleio</u> v. <u>Vose</u>, 830 F.2d 1197, 1203 (1st Cir. 1987); <u>Narragansett Indian Tribe</u> v. <u>Ribo, Inc.</u>, 868 F.2d 5, 7 (1st Cir. 1989). Like other parties, the government should not "be rewarded for somnolence and lassitude." <u>Puleio</u>, 830 F.2d at 1203. We therefore affirm the district court's denial of the government's motion to retransfer this matter to the District of Minnesota.

**b. Does § 4246(g) apply?**

While the district court analyzed Ecker's eligibility for conditional release under § 4246(e), on appeal Ecker contends that he is actually eligible for release under § 4246(g) and that his release should therefore be immediate and without condition. The government vigorously opposes this claim. We acknowledge that much of the legal disagreement in this case is rooted in the extremely unusual fact pattern the case presents. It is not evident that any of the provisions of the civil commitment statute precisely apply to the factual and procedural posture of this case, and as a result both parties' legal arguments at times resemble an attempt to force a square peg into a round hole.

Be that as it may, we are ultimately convinced that § 4246(g) does not apply to Ecker's circumstances. The section in question reads:

> If the director of a facility in which a person is hospitalized pursuant to this chapter certifies to the Attorney General that a person, against whom all charges have been dismissed for reasons not related to the mental condition of the person, is presently suffering from a mental

-13-

disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another, the Attorney General shall release the person to the appropriate official of the State in which the person is domiciled or was tried for the purpose of institution of State proceedings for civil commitment. If neither such State will assume such responsibility, the Attorney General shall release the person upon receipt of notice from the State that it will not assume such responsibility, but not later than ten days after certification by the director of the facility.

18 U.S.C. § 4246(g). To qualify for release under this section, Ecker must show that (1) the charge against him was dismissed "for reasons not related to [his] mental condition," and (2) his release into the community poses a risk of danger due to his mental condition. The section requires that such a person be released to the relevant state for further mental health treatment or, if such state refuses to accept him, that he be released outright within ten days.

It is logically appealing to apply this section of the statute to Ecker because the provision suggests that the federal government cannot retain custody of dangerous, mentally ill people against whom all federal charges have been dropped, a category to which Ecker seems, at first blush, to belong. The provision reflects the general policy underlying the federal civil commitment statute that the states are tasked with caring for the mentally ill and with protecting the general welfare of the larger community.

-14-

See <u>United States</u> v. <u>Lapi</u>, 458 F.3d 555, 563 (7th Cir. 2006) ("The legislative history of the Insanity Defense Reform Act makes clear that the drafters of § 4246 did not intend for federal courts to play such an expansive role. This history instead reflects the general principle that 'care of insane persons is essentially the function of the several states.'") (quoting <u>United States</u> v. <u>Shawar</u>, 865 F.2d 856, 859 (7th Cir. 1989)); <u>United States</u> v. <u>Perry</u>, 788 F.2d 100, 110 (3d Cir. 1986) ("Congress may not . . . authorize commitment simply to protect the general welfare of the community at large."). Further, it reflects the notion that there must be some federal interest in order for the federal government to retain custody over a mentally ill person. <u>See</u> S. Rep. 98-225, at 253, reprinted in 1984 U.S.C.C.A.N. 3182, 3433 (explaining that outright release is required under § 4246(g) "since the federal government would not have enough contacts with the person to justify continued federal hospitalization"); <u>Perry</u>, 788 F.2d at 110 ("The authority conferred by the mental illness civil commitment statute is 'duly guarded,' both procedurally and substantively, and in recognition of the limits of congressional authority it provides for release of the detainee when the federal reason for detention ceases.").

However, we conclude that § 4246(g) does not apply to Ecker because he does not precisely meet its two requirements, though he arguably comes close. First, it is not clear that the indictment was dismissed entirely for reasons unrelated to Ecker's

mental condition. While the district court said that it dismissed the indictment solely because of "the extraordinary duration of his pre-trial detention and the looming prospect of indefinite detention without trial," Ecker, 527 F. Supp. 2d at 202, it is also true that Ecker would not have been held for such a long period of time without trial if he had not been adjudged mentally impaired. In other words, it is difficult to disentangle the dismissal of the indictment from Ecker's mental health status.

Second, given that the Warden has now concluded that Ecker can be conditionally released, it is not clear that he can be said to be presently suffering from a mental disease or defect that renders him dangerous. The district court construed the Warden's authorization of conditional release to be inconsistent with labeling Ecker as "dangerous" due to a mental defect. Ecker, 527 F. Supp. 2d at 203. On appeal, however, Ecker argues that the fact that he is only approved for conditional release, rather than outright release, shows that the original court finding of "dangerousness," which led to his civil commitment, has not been rescinded or undermined. While this is a somewhat appealing argument, we agree with the district court that the Warden's recommendation for conditional release suggests that Ecker falls more naturally under the purview of section (e) than section (g), even though section (g) seems to reflect the policy concerns that arise out of a situation like Ecker's.

-16-

For the above reasons, we conclude that § 4246(g) is ultimately a poor fit given the circumstances of Ecker's case and therefore affirm the district court's refusal to proceed under that section.

## c. Conditional Release Under Section 4246(e)

The district court ordered Ecker's conditional release under 18 U.S.C. § 4246(e), which reads:

> When the director of the facility in which a person is hospitalized pursuant to subsection (d) determines that the person has recovered from his mental disease or defect to such an extent that his release would no longer create a substantial risk of bodily injury to another person or serious damage to property of another, he shall promptly file a certificate to that effect with the clerk of the court that ordered the commitment. . . . The court shall order the discharge of the person or, on the motion of the attorney for the Government or on its own motion, shall hold a hearing, conducted pursuant to the provisions of section 4247(d), to determine whether he should be released. If, after the hearing, the court finds by a preponderance of the evidence that the person has recovered from his mental disease or defect to such an extent that--
>
> (1) his release would no longer create a substantial risk of bodily injury to another person or serious damage to property of another, the court shall order that he be immediately discharged; or
>
> (2) his conditional release under a prescribed regimen of medical, psychiatric, or psychological care or treatment would no longer create a substantial risk of bodily injury to another person or serious damage to property of another, the court shall--

-17-

(A) order that he be conditionally discharged under a prescribed regimen of medical, psychiatric, or psychological care or treatment that has been prepared for him, that has been certified to the court as appropriate by the director of the facility in which he is committed, and that has been found by the court to be appropriate; and

(B) order, as an explicit condition of release, that he comply with the prescribed regimen of medical, psychiatric, or psychological care or treatment.

The court at any time may, after a hearing employing the same criteria, modify or eliminate the regimen of medical, psychiatric, or psychological care or treatment.

While the government agrees with the district court that § 4246(e) is the provision that governs in this case, it argues that the district court failed to comply with the statutory requirements of the section. The government raises four complaints in this regard and we address each in turn.

First, the government argues that the district court erred by accepting the Warden's letter and the attached Risk Assessment Review as constructive certification of Ecker's eligibility for conditional release. The Warden's letter said quite clearly that:

[Ecker] has improved to the extent that his release under a prescribed regimen of psychiatric care would not pose a significant risk of danger to others or serious damage to the property of others. Social Services staff at this facility are attempting to formulate a conditional release plan, and at such time a specific plan is

-18-

> secured, they will be submitting this information
> for your consideration.

While the government argues that this letter is insufficient to satisfy the certification requirement of the statute, we disagree. The Warden's letter could not have been clearer that the medical staff had recommended Ecker for conditional release and that the Warden concurred in that judgment. This satisfies the statute's requirements. Notably, the statute does not prescribe what form the certification should take, and we believe this letter is sufficient.

Second, the government argues that the district court also erred in conditionally releasing Ecker without a certification from the Warden that the release plan was appropriate. This argument ignores the fact that the Warden did indeed submit a plan for Ecker's conditional release that he and the medical staff deemed appropriate. That the district court amended the plan in certain ways does not undermine that certification or the fact that the court properly sought and received guidance from the Warden as to Ecker's future care. The court clearly has the ultimate decision-making authority in crafting the details of the conditional release plan. See 18 U.S.C. § 4246(e) ("The court at any time may, after a hearing employing the same criteria, modify or eliminate the regimen of medical, psychiatric, or psychological care or treatment."); see also United States v. S.A., 129 F.3d 995,

-19-

999 (8th Cir. 1997) ("Under the federal involuntary commitment scheme, the <u>district court</u> is trusted with an awesome responsibility to the public to ensure that a clinical patient's release is safe.") (quotation marks and citation omitted) (emphasis added). Therefore, we see no merit to the government's allegation that the district court failed to receive a certified plan of release from the Warden.

Third, the government argues that the district court violated the statute by refusing to hold an additional hearing regarding whether Ecker should be released and under what conditions. The district court hardly acted precipitously in this case. To the contrary, over the course of four years, the district court has carefully consulted with all parties, appointed a guardian ad litem for Ecker, held status conferences which often included a video link-up for Ecker, sought written and oral testimony from the health care professionals caring for Ecker, sought involvement from the Massachusetts Department of Mental Health, and issued numerous detailed orders.

Despite the district court's diligence, the government contends that the statute, by its plain language, requires the court, if the government so moves, to hold an additional hearing prior to conditionally releasing a committed person. The portion of the statute at issue reads: "The court shall order the discharge of the person or, on the motion of the attorney for the Government

or on its own motion, shall hold a hearing, conducted pursuant to the provisions of section 4247(d), to determine whether he should be released." 18 U.S.C. § 4246(e). We agree with the Eighth Circuit's view that "[u]nder the plain, unambiguous language of § 4246(e), it is clear that Congress did not intend to require that a hearing be conducted by the district court prior to releasing an individual who has been committed pursuant to § 4246(d)." United States v. McAllister, 225 F.3d 982, 987 (8th Cir. 2000). This conclusion is based on a simple reading of the statute: "Section 4246(e) gives the district judge a choice: he may either discharge the committed person, or he may conduct a hearing to determine whether the committed person should be released." Id. at 987-88. In this case, the district court reasonably chose to discharge Ecker based on the information it had already collected rather than hold an additional hearing. Furthermore, we are satisfied as a practical matter that an additional hearing was not necessary as the court had diligently pursued all avenues for a safe and fair resolution of this case, hearing frequently and at length from all interested parties.

Finally, the government argues that the release conditions imposed by the district court are inadequate. We review the conditions of release only for abuse of discretion. See McAllister, 225 at 990; United States v. Jain, 174 F.3d 892, 899 (7th Cir. 1999). The government's challenge on this ground

-21-

involves two separate complaints. First, the government strongly objects to the district court's determination that once Ecker is transferred out of federal custody, "that transfer will be final." In effect, as a condition of his release, the district court eliminated the ongoing federal supervision that the statute anticipates as part of a conditional release regimen. See 18 U.S.C. § 4246(f) (permitting the revocation of conditional discharge and re-arrest for failure to comply with a prescribed regimen of medical, psychiatric, or psychological care or treatment). We do not believe the imposition of this condition was an abuse of the court's ample discretion. Rather, the court below was rightly concerned that Ecker's unusual case fell outside the normal scope of the federal civil commitment statute. The court observed that his continued detention in federal custody -- with no pending federal indictment, an approval for conditional release, almost two decades in federal "pre-trial" detention, and little prospect that the Commonwealth would ever voluntarily assume custody of him -- would constitute a denial of due process.[5] Given

---

[5]Because we decide this case on other grounds, we do not reach this constitutional question and leave it open for another day. There are fair arguments on both sides as to whether continued federal custody of Ecker would violate his right to due process, see, e.g., United States v. Sahhar, 56 F.3d 1026 (9th Cir. 1995), or whether the federal government lacks the power to maintain custody over Ecker where it only seeks to protect the general welfare, see, e.g., United States v. Comstock, 551 F.3d 274 (4th Cir. 2009), cert. granted, 2009 WL 908431 (U.S. June 22, 2009) (No. 08-1224). Given the contours of the case before us, we find no prior case that is dispositive of the constitutional question. The

these circumstances we agree with the district court that it is difficult to identify the federal interest authorizing Ecker's continued federal detention, and it was reasonable for the court to conclude that any violation of the terms of his conditional release would "carry, as the only consequence, the involuntary commitment to a state mental health care facility."[6]  Ecker, 538 F. Supp. 2d at 334.

Second, the government argues that the district court's conditional release order eliminated numerous commonsense requirements that had been part of the Warden's original proposal, including the requirement that Ecker comply with a prescribed treatment regimen, a ban on Ecker's ownership or possession of firearms and use of illegal drugs and alcohol, and a prohibition against Ecker contacting "identified female victims of unwanted attention."  The government is correct that these conditions were

---

Sahhar case, while well-reasoned, is not definitive given that Ecker has been in federal custody for two decades and has been approved for conditional release, while Sahhar was not approved for conditional release and was found to still be dangerous.  The Commonwealth's consistent refusal to take responsibility for Ecker's care further distinguishes Sahhar from the case before us.

[6]The government argues that it is possible that the Commonwealth could not civilly commit Ecker under its own standards because of the district court's conclusion that Ecker is eligible for conditional discharge.  That question is not for us to decide, and nothing in this opinion is intended to suggest that a Massachusetts court would be prevented from considering updated relevant information about Ecker's condition and behavior or Ecker's potential for dangerousness if he is not properly medicated.

part of the Warden's proposed plan. It is less clear to us whether these conditions were included in the district court's final order in this case. The order itself outlines the details of Ecker's transition into the general population at the federal mental health facility and his transfer to the Massachusetts Department of Mental Health; it does not contain the conditions mentioned above. See id. at 337. However, the memorandum accompanying the order suggests that the district court intended to use the Warden's proposal as the basis of its order (with two modifications) and that it intended specifically to maintain the above-mentioned reasonable restrictions. See id. at 333-34 ("The conditions of Mr. Ecker's release, such as continued medical treatment and abstinence from contact with previous victims of unwanted attention, are precisely tailored to ensure that Ecker will not become a substantial risk to the community."). Thus we are left with some confusion as to the court's intent.

Therefore, we remand this matter to the district court for the issuance of a new, updated order which will include: (1) all of the conditions of release with which Ecker must comply; (2) the details and timing of Ecker's transfer to the general population of the federal mental health facility; (3) the details and timing of Ecker's release from federal custody and transfer to the Massachusetts Department of Mental Health; (4) the consequences to Ecker should he fail to comply with the conditions; and (5) the

results should the Department of Mental Health refuse to receive or care for Ecker, which could include his outright release. Our remand is intended solely to clarify for all parties the precise process, requirements, and consequences of Ecker's conditional release. It is not an opportunity to relitigate matters which have been resolved nor is it an opportunity for further delay of the resolution of this case.

We close by noting that this is not an easy case and the district court has done an admirable job of hearing all interested parties and attempting to craft a safe and fair resolution to a situation that is seemingly unique in the case law and likely was unanticipated by Congress when drafting the civil commitment statute.[7] This court does not have the power to order the Commonwealth to provide Ecker with the proper care and treatment so as to ensure his own well-being and that of the general public. However, it is obvious to us that the federal statute reflects the long-standing policy that states have the primary obligation to care, treat, and confine the mentally ill. The district court's efforts in this matter have been aimed at encouraging the Commonwealth to assume its responsibility for Ecker in a safe manner given that the federal interest in his detention has diminished significantly. Given our lack of power over the

---

[7]Given this apparent lapse, Section 4246 would be a fruitful area for congressional consideration.

-25-

Commonwealth's actions in this case, we can only urge Massachusetts in the strongest possible terms to do all that is necessary and lawful in this case to protect both Ecker and the general public.

### III. Conclusion

For the foregoing reasons, we **AFFIRM** the district court in all respects, save for a **REMAND** for clarification of the precise conditions and timing of Ecker's conditional release.