# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-1075

_____

United States of America

*Plaintiff - Appellee*

v.

Donald White

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Springfield

_____

Submitted: December 15, 2016
Filed: March 10, 2017
[Unpublished]

_____

Before WOLLMAN and SMITH, Circuit Judges, and WRIGHT,[1] District Judge.

_____

PER CURIAM.

In 1987, Donald White was charged in the Southern District of Florida with threatening President Ronald Reagan, in violation of 18 U.S.C. § 871(a). The district

_____

[1]The Honorable Wilhelmina M. Wright, United States District Judge for the District of Minnesota, sitting by designation.

court[2] found White to be mentally incompetent to stand trial and committed him to the custody of the Attorney General under 18 U.S.C. § 4241. White's civil commitment has continued at various treatment facilities since then. In August 2015, White filed his most recent *pro se* motion for a discharge hearing, which the district court[3] denied. White, now represented by counsel, appeals, arguing not that the district court improperly denied his motion for a hearing, but that he should be immediately released because the court no longer has jurisdiction over him. We deny White's requested relief.

After White's civil commitment by the district court in Florida, he was placed at the Federal Medical Center in Springfield, Missouri (FMC-Springfield), and was diagnosed with paranoid schizophrenia. FMC-Springfield recommended continued inpatient treatment because of the substantial risk of injury to persons and damage to property should White be released.[4] In May 1990, the district court[5] in the Western District of Missouri reviewed the psychiatric assessment and agreed that White was mentally ill and dangerous. Because the State of Florida refused to accept White for treatment, the court entered an order committing White to the continued custody of the Attorney General under 18 U.S.C. § 4246. White was transferred to the Federal Medical Center in Rochester, Minnesota (FMC-Rochester), in July 1990.

---

[2]The Honorable William J. Zloch, United States District Judge for the Southern District of Florida.

[3]The Honorable Dean Whipple, United States District Judge for the Western District of Missouri.

[4]The district court in the Southern District of Florida later entered a *nunc pro tunc* order, directing the Attorney General to pursue civil-commitment proceedings in the Western District of Missouri, the district in which White was then confined.

[5]The Honorable William R. Collinson, United States District Judge for the Western District of Missouri, now deceased.

In October 1992, a risk assessment panel at FMC-Rochester recommended that White be conditionally discharged under a prescribed regimen of inpatient care to a treatment facility in Florida. The district court[6] ordered that White be conditionally discharged "under the provisions of § 4246," that he "comply with [the recommended] treatment regimen," and that he remain under the supervision of "the U.S. Probation Office until he is finally discharged from treatment." The court also ordered that it was to be notified "[p]rior to any final discharge from treatment . . . so that [White's] conditions of release may be reviewed." White was then transferred from FMC-Rochester to the Florida treatment facility, where he remained for roughly six years under the terms of the court's April 1993 conditional discharge order.

Several years later, White began having difficulty controlling his behavior and was repeatedly abusive to staff members and other patients at the Florida treatment facility. In a January 2001 letter, staff members reported that White was no longer suitable for placement because of his noncompliance, was not benefitting from the treatment program, and was a danger to others. The district court issued an arrest warrant based on White's violations of the conditions of his release, and White was arrested and readmitted to FMC-Springfield. A risk assessment panel determined months later that White had stabilized to the point that he could be returned to an inpatient treatment facility in Florida. Following a hearing, the magistrate judge found that White's unconditional release "pose[d] a substantial risk of danger to other persons and the community." Because "[s]tate placement [was] not presently available," the magistrate judge recommended that White "be recommitted under the provisions of § 4246." The district court adopted the recommendation and committed White to the custody of the Attorney General under § 4246 based on the "unanimous expert opinion" that White's mental illness created a substantial risk of bodily injury

---

[6]The Honorable Russell G. Clark, United States District Judge for the Western District of Missouri, now deceased.

or serious property damage. The court also ordered the Attorney General to "attempt to secure appropriate state placement."

In November 2002, the government filed another motion for White's conditional discharge under § 4246(e), attaching a risk assessment report and a related certification from the director of FMC-Springfield. The government noted that White's condition had improved such that his conditional discharge under a prescribed regimen of care would no longer create a substantial risk, and it recommended that White be conditionally released under § 4246(e) to the same Florida treatment facility. The district court granted White's conditional discharge, subject to twenty-seven conditions of release recommended by the director of FMC-Springfield. Although the Florida treatment facility would make decisions regarding White's medical and psychiatric care, White was to be supervised throughout his term of release "by the U.S. probation office, Southern District of Florida," and any change in his treatment program or placement had to "be approved, in advance, by his supervising U.S. probation officer." Any failure by White to comply with the stated conditions would result in his arrest and appearance before the court for a hearing under § 4246. The treatment facility was instructed to prepare and file with the district court annual risk assessment reports as required under § 4247(e). The court ordered White's unspecified term of conditional release to continue "until further order of this court."

In 2007, White's U.S. probation officer in Southern Florida received separate reports from the treatment facility that White had attempted to strangle one patient and had sexually assaulted another. White's placement at the facility was terminated, and he was transferred to a different treatment facility in Florida, where his abusive behavior continued. White's probation officer was notified of three separate incidents in May 2008 when White assaulted staff members or other patients. In a May 2008 letter to the district court, White's probation officer reported these incidents, advised the court that White had "been terminated from each residential

living program" in which he had been placed, and stated that there were "no other residential programs available" in Florida. The district court granted the probation officer's request for a warrant, and White was arrested and returned to FMC-Springfield in August 2008.

The government moved for revocation of White's conditional release in September 2008 and requested a hearing under § 4246(f) "to determine whether he should be confined in a suitable facility on the ground that his continued release would create a substantial risk of bodily injury" or serious property damage. A risk assessment report by staff at FMC-Springfield concluded that White posed a substantial risk to others and that conditional release was not appropriate. FMC-Springfield staff had inquired into whether the state of Florida "would be willing to assume responsibility for [White's] care, custody, and treatment" and learned that such placement was not possible. After a hearing, the magistrate judge recommended that White's conditional release be revoked. The district court adopted that recommendation, and in March 2009, White was committed to the custody of the Attorney General under § 4246 and was later transferred to FMC-Rochester.

In August 2015, White filed a *pro se* motion for a discharge hearing and unconditional release. The government opposed the motion and submitted FMC-Rochester's most recent risk assessment report, which concluded that White's "unconditional release would create a substantial risk of danger due to mental illness" and that he "continue[d] to meet the criteria for commitment" under § 4246. The report also discussed whether White could be conditionally released to a treatment facility in Florida, but declined to recommend such a course given White's insistence that he would not abide by the facility's rules. The district court denied White's motion for a discharge hearing. As set forth above, White appeals, arguing that the district court lost jurisdiction over him in 1993 when the State of Florida assumed responsibility for his custody, care, and treatment under § 4246(d)(1). He seeks immediate and unconditional release from FMC-Rochester.

A district court's jurisdiction is a question of law that we review *de novo*, and a challenge to the district court's jurisdiction may be raised at any time, even for the first time on appeal. United States v. Afremov, 611 F.3d 970, 975 (8th Cir. 2010); see also United States v. Hacker, 450 F.3d 808, 814, 814 n.4 (8th Cir. 2006).

White was initially committed to the custody of the Attorney General under 18 U.S.C. § 4241 after being found to suffer from a mental disease or defect rendering him mentally incompetent to stand trial on federal criminal charges. Because his condition did not improve during a "reasonable period of time" such that he was competent to stand trial, White became subject to the provisions of 18 U.S.C. § 4246. See 18 U.S.C. § 4241(d). "Section 4246 provides for the indefinite hospitalization of a person who . . . , as the result of a mental illness, poses a significant danger to the general public." United States v. S.A., 129 F.3d 995, 998 (8th Cir. 1997). Under § 4246(a), if a person is hospitalized after being committed to the custody of the Attorney General under § 4241 and is found to be "presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another, and . . . suitable arrangements for State custody and care of the person are not available," the director of the facility at which the person is hospitalized must file a certification to that effect with the district court. If, after a hearing, the court finds by clear and convincing evidence that the person is indeed mentally ill and dangerous, the court "shall commit the person to the custody of the Attorney General." 18 U.S.C. § 4246(d).

Thereafter, the Attorney General is required to "release the person to the appropriate official of the State in which the person is domiciled or was tried," but only "if such State will assume responsibility for his custody, care, and treatment." Id. The Attorney General must "make all reasonable efforts to cause such a State to assume such responsibility," but if those efforts are unsuccessful, the Attorney General must "hospitalize the person for treatment in a suitable facility, until (1) such

a State will assume responsibility; or (2) the person's mental condition is such that his release, or his conditional release under a prescribed regimen of medical, psychiatric, or psychological care or treatment would not create a substantial risk of bodily injury to another person or serious damage to property of another." Id. The Attorney General has a continuing obligation to make efforts to "cause such a State to assume responsibility for the person's custody, care, and treatment," but has no authority to force such a state to do so. Id.

The Attorney General is also authorized to "contract with a State, a political subdivision, a locality, or a private agency for the confinement, hospitalization, care, or treatment of, or for the provision of services to, a person committed to his custody." Id. § 4247(i)(A). As we read this provision, a state that merely enters into a contract with the Attorney General under § 4247(i) does not thereby agree to "assume responsibility for [the] custody, care, and treatment" of a person committed to the custody of the Attorney General under § 4246. Likewise, the Attorney General does not lose authority over a person committed to his custody under § 4241 or § 4246 merely because he contracts with a state to provide such services. Instead, the Attorney General is required to "release" the person only to "the appropriate official of the State" and only if the "State will assume responsibility for his custody, care, and treatment." Id. § 4246(d); see also Ecker v. United States, 575 F.3d 70, 74 (1st Cir. 2009) (recognizing that the government has options that include "entering into a contractual relationship with the [State] or a private agency for [civilly committed person's] care" under § 4247(i) or "making an affirmative application for [his] civil commitment under the [State] mental health statute"); cf. United States v. Lapi, 458 F.3d 555, 563 (7th Cir. 2006) (noting that federal district court no longer had authority to intervene after "state civil commitment proceedings were instituted and the defendant was transferred to state custody" as contemplated by § 4246(a) (emphasis omitted)).

When White was accepted into the Florida treatment facility in 1993 and again in 2002, he was subject to a "conditional release plan" proposed by FMC-Rochester or FMC-Springfield and approved by the district court under § 4246(e)(2). Each conditional release plan—and White's prescribed regimen of care—included significant supervision and oversight by the U.S. Probation Office and, ultimately, the district court. Although the Attorney General is required to release a person committed to his custody "to the appropriate State . . . if such state will assume responsibility," the State of Florida never assumed ultimate responsibility over White, instead deferring to the U.S. Probation Office and the district court regarding changes in White's treatment program and decisions regarding his discharge from treatment or change in placement. Moreover, the director of the Florida treatment facility notified the U.S. probation officer—as required under the conditional release plan—when White's noncompliance twice led to his termination from the treatment program. The district court then exercised its jurisdiction over White under § 4246(f) when it twice revoked White's conditional discharge, ordered that White be arrested, determined after a hearing that White's mental illness rendered him a danger, and concluded that White should be remanded to a "suitable" federal medical facility.

Given the absolute authority retained by the government each time White was conditionally discharged to the Florida facility, as well as the court's indication that the discharge was pursuant to § 4246(e), we are satisfied that the "appropriate official" of the State of Florida never "assume[d] responsibility" for White under § 4246(d). Rather, the Attorney General merely "contract[ed] with [the] State" of Florida" for the "confinement, hospitalization, care, or treatment of, or the provision of services to" White, "a person committed to his custody" under the relevant federal statutes. 18 U.S.C. § 4247(i); see United States v. Comstock, 560 U.S. 126, 146 (2010) (noting that the Attorney General is required to "encourage the relevant States to take custody" of a sexually dangerous individual who has been civilly committed under 18 U.S.C. § 4248 "and to relinquish federal authority *whenever a State asserts its own*" (emphasis added)); United States v. McAllister, 225 F.3d 982, 987-90 (8th

Cir. 2000) (observing that district court retained authority to revoke conditional discharge under § 4246(f) after person civilly committed under § 4246 at FMC-Rochester was conditionally discharged under regimen of care to South Carolina Department of Mental Health).

White notes that the State of Florida initially refused to assume responsibility for him, due in part to the pending federal criminal charges against him for threatening the president. White speculates that those charges must have been dismissed or that Florida must have made an exception to its policy not to accept civilly committed persons with pending federal charges. He argues that because the federal charges against him must have been dismissed, the federal government has no continuing interest in exercising jurisdiction over him. There is nothing in the record to indicate that the federal charges against White have been dismissed or that Florida made an exception to its policy. As noted above, under § 4247(i), a state may contract with the Attorney General under § 4247(i) to provide care and treatment to a civilly committed person without assuming ultimate responsibility under § 4246 over that person. See Ecker, 575 F.3d at 78 (noting general rule that "there must be some federal interest in order for the federal government to retain custody over a mentally ill person").

"[T]he district court is trusted with 'an awesome responsibility to the public to ensure that a clinical patient's release is safe.'" S.A., 129 F.3d at 999 (quoting United States v. Bilyk, 949 F.2d 259, 261 (8th Cir. 1991)). "Section 4246 is specifically designed to avert the public danger likely to ensue from the release of mentally ill and dangerous detainees" and to ensure that such "individuals receive proper treatment." Id. at 999. Although civil commitment of the mentally ill is traditionally a matter of state concern, § 4246 applies when "suitable arrangements for state care and custody are unavailable." Id. at 1000. Such arrangements were unavailable in this case. When White's conditional discharge was revoked in 2002, the court noted that "[s]tate placement [was] not presently available." And when White's conditional

discharge was revoked again in 2008, FMC-Springfield staff first noted that they were attempting to "determine if the [State of Florida] would be willing to assume responsibility for his care, custody, and treatment," but were eventually forced to "rule out state placement," in part due to White's refusal to cooperate. Had Florida assumed responsibility in 1993 for White's custody, care, and treatment as contemplated by § 4246(d), FMC-Springfield would not have been attempting to secure Florida's consent to assume such responsibility in 2008. Moreover, had the State of Florida assumed such responsibility for White in 1993, it would not have repeatedly deferred to the conditions of release imposed by the district court, reported violations of those conditions to the U.S. Probation Office, or relinquished custody of White to the U.S. Marshals. The Attorney General "must encourage [the appropriate State] to assume custody" of the person and must "immediately 'release' that person 'to the appropriate official of'" such State "'if such State will assume [such] responsibility.'" Comstock, 560 U.S. at 143-45 (construing similar language of 18 U.S.C. § 4248). The State "has the right, at any time, to assert its authority over the individual, which will prompt the individual's immediate transfer to State custody." Id. In other words, § 4246 requires the Attorney General "to relinquish federal authority *whenever a State asserts its own*." Id. (emphasis added). The State of Florida did not assert such authority in this case.

The FMC-Springfield medical experts unanimously agree that White is currently suffering from a mental disease or defect such that his release would create a substantial risk of bodily injury to another person or serious damage to property of another. Further, the FMC-Springfield director has certified that there is no suitable state treatment facility that will assume responsibility for White's custody, care, and treatment, rendering his continued commitment to the custody of the Attorney General proper under § 4246. The district court thus retained jurisdiction over White. Because White continues to meet the § 4246 criteria for commitment to the custody of the Attorney General, we deny his request for immediate release.

_____