# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-3783

_____

United States of America,

        Appellee,

v.

Gordon Franklin, Jr.,

        Appellant.

\*
\*
\*
\*  Appeal from the United States
\*  District Court for the
\*  Western District of Missouri.
\*
\*
\*

_____

Submitted: June 20, 2005
Filed: January 25, 2006

_____

Before LOKEN, Chief Judge, ARNOLD, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Gordon Franklin, Jr., appeals the district court's[1] revocation of his conditional release from mental health commitment under 18 U.S.C. § 4246. We affirm.

_____

[1]The Honorable Richard E. Dorr, United States District Judge for the Western District of Missouri.

I.

Franklin was first involuntarily hospitalized due to mental disease or defect on February 1, 1991. He was conditionally released in 1993, but his release was revoked later that year. In 2003, the United States moved for Franklin's conditional release based on the government's conclusion that Franklin had recovered from his mental disease or defect to such an extent that his conditional release would be appropriate, and the district court granted the motion. The conditions placed on Franklin's release by the district court included the following:

1. The defendant shall participate in mental health treatment services as directed by the U.S. probation officer until successfully discharged. These services may include prescribed medications by a licensed physician.

2. The defendant shall take prescribed psychotropic medication, including injectable medications, submit to any blood level tests made necessary by the medications, and participate in all mental health treatment and education ordered by Apalachee Center, Inc.

3. Defendant shall, while on an outpatient status, comply with any request by the treating clinicians to return temporarily to inpatient status at a community psychiatric hospital for treatment or medication adjustment.

4. Defendant shall be supervised by the United States probation office and will comply with the standard conditions of the Northern District of Florida. This involves waiving his right to confidentiality regarding his mental health treatment in order to allow sharing of information with the supervising probation officer.

5. Defendant must participate in all supportive services recommended by the U.S. probation officer.

6.    Defendant may not possess or own any firearm or other dangerous weapon.

7. Defendant shall abstain from the use of alcohol and/or all other intoxicants during and after completion of treatment.

8. Prior to any final discharge from treatment, the director of the treating facility shall notify this court so that defendant's conditions of release can be reviewed.

(J.A. at 24-25).

On August 19, 2004, in light of developments reported by the United States Probation Office in Florida, the government moved to revoke Franklin's conditional release.  In support of the motion, the government produced a letter from probation officer Mark Davy, which described events of August 18, 2004.  Davy explained that Franklin unexpectedly reported to the probation office, waited in the lobby for fewer than five minutes, and then returned home.  From his home, Franklin reportedly called the probation office and spoke to a receptionist.  Davy arranged for the call to be transferred to his extension, and he told Franklin that in the future he should contact Davy or his supervisor "concerning any issues," rather than speaking to the receptionist. (Add. at 14).  Franklin then "became agitated and upset with" Davy, and "made additional threats and comments specifically directed" toward Davy, including that "I'm gonna sic my hounds on you" and "I will blow your brains out.  You and [your supervisor]."  (*Id.*).

According to Davy, Franklin further stated that he "could make any statement he wanted to make under his protection of freedom of speech," and that Davy "had no jurisdiction or authority to control his statements or speech."  (*Id.*).  Franklin also reportedly said that when he "leaves this country," he "might say Mr. Davy need[s] to be killed, his family, wife, children, mother, whole genealogy."  (*Id.*).  He also said he "might say the Judge who messed me up, he might need to be killed."  (*Id.*).

Finally, after Davy stated that he construed the comments as threats to himself, his supervisor, and the court, Franklin replied that "once he gets his '4246', he is going to leave the country and those who have opposed him would be punished." (*Id.* at 15).

A letter from Franklin's brother, dated August 13, 2004, was also presented with the motion. The brother stated his belief that it was in Franklin's best interest "to be taken into custody so that he may be evaluated with respect to his recent behavior and statements." (*Id*. at 16). He recounted that "over the past two weeks, [I] have seen a side of him I have not seen before." (*Id.*). Although he did not believe Franklin would harm him, Franklin's brother was afraid Franklin might "harm others." (*Id.*). He asserted that, "[a]lthough [Franklin] is taking his prescribed medication, it appears the drugs are not working." (*Id.*). He noted that his sister "is afraid of [Franklin]," and concluded that he considered Franklin "to be a potential risk to harm himself or others." (*Id.*).

A warrant was issued for Franklin's arrest, and on August 26, 2004, the United States Marshal's Service returned Franklin to the United States Medical Center for Federal Prisoners in Springfield, Missouri. Franklin's motion of September 2, 2004, for a separate mental examination was granted, and Dr. Kenneth Burstin, Ph.D., a clinical psychologist, reviewed Franklin's files and interviewed him. The report compiled by Dr. Burstin concluded that Franklin continued to suffer from bipolar disorder, and that he "does meet the criteria for commitment at this time." (J.A. at 42).

The government then submitted to the district court a risk assessment review report ("Report"), complied by a panel of mental health experts. The Report concluded that Franklin, while able in the past "to conceal manifestations of his illness relatively well," had "clearly worse[ned] such that he disputes even suffering from mental illness." (*Id*. at 49). According to the panel, Franklin "anticipates that his psychiatric medication can soon be dispensed with altogether." (*Id.*).

The Report continued: "Worryingly, this deterioration appears to have taken place despite reported medication compliance – it appears his present regimen is no longer adequate, rather than simply a straightforward issue of compliance." (*Id.*). Franklin, according to the panel, "is most resistant to considering [a]n increase in dose of any of his medications," and "[m]oreover, continued deterioration, which will likely snowball if he makes good on his intimations that he should not be taking medication at all, will likely lead to a return to the kind of assaultive behavior documented in old records." (*Id.*). The Report concluded that "[i]n light of these circumstances, it is the panel's opinion, with reasonable medical and psychological certainty, that Mr. Franklin's release in his present clinical condition would pose a substantial risk to others or the property of others due to mental illness." (*Id.* at 50).

On September 29, 2004, a magistrate judge presided over an evidentiary hearing on the revocation motion, at which Franklin testified. Franklin acknowledged that he had a "psychologic disorder," (*id.* at 55), but testified that he was currently taking medication and was "doing fine" coping "in open population." (*Id.* at 56). He maintained that he would not pose a danger to himself or others "as long as I'm still on a regimented prescribed medication." (*Id.*). He also indicated that he regretted his comments to Davy and suggested that they were misunderstood.

The magistrate judge issued a report and recommendation, concluding that "[t]he behavior of the defendant and the report submitted by the mental health professionals establish that he has failed to comply with his prescribed regimen of treatment and that his continued release would pose a risk to society." (*Id.* at 60). The judge acknowledged that "there is no direct evidence that the treatment regimen was not followed," but reasoned that "the abrupt change in defendant's behavior supports that conclusion." (*Id.* at 60 n.1). The judge recommended that Franklin's release be revoked and that he be recommitted.

Franklin took exception to the report and recommendation, noting his testimony that he had been taking his medication and that he would not be a danger to others. He argued that "the evidence in this case is insufficient to show that, due to his mental illness, his release would create a substantial risk of bodily injury to another person or serious damage to the property of another." (*Id*. at 61).

The district court, after considering Franklin's objections, concluded that "[a] review of the files and records in this case establishes that the defendant violated his conditional release and failed to comply with his prescribed regimen of treatment." (*Id*. at 64). The court also noted that "[t]he unanimous expert opinion is that defendant suffers from a mental disease or defect, as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another," and concluded that clear and convincing evidence indicated that Franklin's conditional release should be revoked and that commitment under § 4246 was appropriate. (*Id*.).

## II.

Section 4246 sets out procedures governing persons in the custody of the Bureau of Prisons who are due for release, but who are suffering from a mental disease or defect such that their release would pose a "substantial risk of bodily injury to another person or serious damage to property of another." 18 U.S.C. § 4246(a). The statute authorizes the conditional release of a defendant where "the court finds by a preponderance of the evidence that the person has recovered from his mental disease or defect to such an extent that . . . his conditional release under a prescribed regimen of medical, psychiatric, or psychological care or treatment would no longer create a substantial risk of bodily injury to another person or serious damage to property of another." *Id*. § 4246(e)(2). Section 4246(f) authorizes revocation of the conditional release if a court determines that, "in light of [the person's] failure to comply with the prescribed regimen of medical, psychiatric, or psychological care or treatment, his

continued release would create a substantial risk of bodily injury to another person or serious damage to property of another."

The parties dispute whether Franklin's conditional release can be revoked as a result of his behavior on August 18, 2004. In light of the risk assessment report, which found that Franklin's conduct appeared to have taken place despite reported medication compliance, the government does not defend the magistrate judge's conclusion that Franklin's change in behavior alone establishes that he failed to take his prescribed medication. The government contends, however, that Franklin violated release condition four, which required compliance with the standard of conditions of supervision in the Northern District of Florida. The complete list of standard conditions has not been made part of the record on appeal, but the probation officer reported that Franklin violated a mandatory condition of supervision by failing to refrain from violation of law, (J.A. at 12), and we have no reason to doubt that compliance with federal, state, and local law was a standard condition of supervision. *See* USSG § 5D1.3(a)(1).

To bring the revocation within the terms of § 4246(f), the government contends that a violation of release condition four is a "failure to comply with the prescribed regimen of medical, psychiatric, or psychological care or treatment," because any reasonable condition of release must be viewed as part of the "prescribed regimen." Franklin's argument is that compliance with federal, state and local laws is not part of the "prescribed regimen," because that condition has nothing to do with "medical, psychiatric, or psychological care or treatment." Therefore, he says, revocation of his discharge is not authorized by § 4246(f).

We find it difficult to conclude that condition four is part of Franklin's prescribed regimen of medical, psychiatric, or psychological care or treatment *per se*, but we do not agree with Franklin that only violations of release conditions that are part of a treatment regimen can be the basis for revocation of his release. Viewing the

range of statutory authority available to the district court, we conclude that the court is authorized to impose conditions that are ancillary to the prescribed regimen, so long as they are related to the person's mental illness and reasonably necessary to protect the safety of persons and property. We further conclude that the court may revoke a conditional discharge upon finding a violation of the conditions of release, at least where, as in this case, the violation flows from the person's mental disease and demonstrates that continued release presents a danger to the community.

Section 4246(e)(B) states that the court shall, upon conditionally releasing a person, "order, as an explicit condition of release, that he comply with the prescribed regimen of medical, psychiatric, or psychological care or treatment." Nothing in § 4246, however, imposes a limitation on other conditions that might be imposed, and the use of the indefinite article "an" in § 4246(e) to describe the condition requiring compliance with the prescribed regimen implies that other conditions also are authorized. Congress apparently envisioned the possible imposition of multiple conditions of release, not merely "*an* explicit condition" that the released person comply with a "prescribed regimen," when it provided that a probation officer charged with supervising a conditionally released person shall "immediately report any violation of the *conditions* of release to the court and the Attorney General or his designee." 18 U.S.C. § 3603(8)(B) (emphasis added). We thus agree with other circuits, which have construed the identically-worded 18 U.S.C. § 4243(f)(2)(B), that a district court has authority to impose conditions, in addition to a regimen of care or treatment, that are related to the mental disease or defect and reasonably necessary to assure the safety of the community. *See United States v. Jain*, 174 F.3d 892, 898 (7th Cir. 1999) (construing § 4243(f)(2)(B), noting that "the use of the indefinite article suggest[s] that other conditions may be imposed as well," and concluding that "[n]othing in § 4243 purports to repeal other statutes that entitle district courts to issue orders ancillary to the disposition of cases before them"); *United States v. Phelps*, 283 F.3d 1176, 1186-87 (9th Cir. 2002) (agreeing with *Jain*, observing that additional conditions "must be related to the mental illness," and remarking that "[i]t is a

reasonable interpretation of the statute, and makes common sense, that if the district court can deny the release entirely, then the district court can also authorize other conditions to assure the safety of the general public and grant the release").

The command of condition four that Franklin comply with the "standard conditions of the Northern District of Florida," (J.A. at 24), at least insofar as it required Franklin to refrain from threatening the lives of his supervising probation officers and the district judge, was related to his mental illness (which involved a history of threatening behavior, J.A. at 35-37) and reasonably necessary to ensure effective supervision and the safety of the community. Franklin did not object to the imposition of this condition, and he does not now contend that it was unauthorized. *Cf. United States v. Woods*, 995 F.2d 894, 897 (9th Cir. 1993). The record is sufficient to show that refraining from violation of the law is a standard condition of supervision in the Northern District of Florida, and threats of death and retribution against a probation officer, a supervisory probation officer, and a federal judge are plainly inconsistent with that condition. *See, e.g.*, 18 U.S.C. § 115. The district court thus did not err in concluding that Franklin violated his conditional release. (J.A. at 64).

We further conclude that the district court, having been authorized to impose the ancillary condition of release, also had authority to revoke the conditional release in light of Franklin's failure to comply, the evidence showing that non-compliance flowed directly from Franklin's mental illness, and the danger to the community presented by Franklin's continued release. Section 4246(f) permits revocation where, "in light of [a person's] failure to comply with the prescribed regimen of medical, psychiatric, or psychological care or treatment, his continued release would create a substantial risk of bodily injury to another person or serious damage to the property of another." The statute does not specifically address the recourse available to a district court when a released person violates other conditions of release that are ancillary to the prescribed regimen. We believe the authority to revoke discharge for

a "failure to comply with the prescribed regimen," by its own terms or in conjunction with the court's power under the All Writs Act, 28 U.S.C. § 1651, "to issue such commands . . . as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued," *Pa. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 40 (1985), must include authority to revoke discharge for a failure to comply with other conditions of release ancillary to the regimen, at least where the violation results from the released person's mental condition and demonstrates that the person presents a substantial risk of injury to persons or property if release is continued.

Our sister circuits have recognized that the statutory authority to impose a prescribed regimen of care or treatment as a condition of release does not imply a repeal of other statutory authority to impose ancillary conditions of release. *Jain*, 174 F.3d at 898; *Phelps*, 283 F.3d at 1187. Similarly, the authority to revoke a conditional release for non-compliance with a prescribed regimen of care or treatment does not imply the absence of authority to sanction violations of other conditions of release that are properly imposed. When it recognized the duty of probation officers to report violations of release conditions other than a prescribed regimen, Congress must have contemplated an enforcement mechanism for those conditions of release. For without enforcement, the released person could violate the conditions with impunity, and the court would be powerless to revoke his release, even if the violations demonstrate that conditional release is a failure and that a recurrence of the released person's mental disease or defect poses a danger to the public.

For these reasons, the judgment of the district court is affirmed.

_____