FILED
United States Court of Appeals
Tenth Circuit

**March 16, 2010**

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

COBY LIVESAY,

      Defendant-Appellant.

No. 09-5080

---

**Appeal from the United States District Court
for the Northern District of Oklahoma
(D.C. No. 4:08-CR-00097-JHP-1)**

---

Winston H. Connor, II, Stockwell & Connor (Gloyd L. McCoy, Noble, Oklahoma, with him on the briefs), Miami, Oklahoma, for Defendant-Appellant.

Stephen L. Sewell, Assistant United States Attorney (Thomas Scott Woodward, Acting United States Attorney, with him on the brief), Tulsa, Oklahoma, for Plaintiff-Appellee.

---

Before **HARTZ, SEYMOUR,** and **GORSUCH**, Circuit Judges.

---

**GORSUCH**, Circuit Judge.

---

At his trial on gun charges, a jury found Coby Livesay not guilty by reason of insanity. The district court responded to the verdict by ordering a psychiatric evaluation of Mr. Livesay and holding a series of hearings, after which the court

held that Mr. Livesay could not be unconditionally released without posing a substantial risk to others. In light of this conclusion, the district court committed Mr. Livesay to the custody of the Attorney General while expressly leaving open the possibility of Mr. Livesay's release, either conditionally or unconditionally, at a later date. Mr. Livesay now appeals the district court's ruling to us. But, as we will explain, the district court's ruling represented the only possible course of action available to it under the processes Congress has mandated for the care and disposition of insanity acquittees. So it is that we must affirm.

* * *

In 2005, Mr. Livesay attacked his father. When law enforcement arrived at the scene, Mr. Livesay was wielding a shotgun. He fired the gun into the ground and several pellets ricocheted and struck two officers. Oklahoma authorities replied by charging Mr. Livesay with state crimes. After Mr. Livesay posted bail, and while he was awaiting trial, he voluntarily entered a residential mental health treatment facility called Sugar Mountain Retreat.

Though the district attorney eventually dropped the state charges, a federal grand jury decided to bring its own. In light of Mr. Livesay's prior felony conviction, the grand jury charged him with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) & 924(a)(2). At trial, however, Mr. Livesay argued and succeeded in showing that he was not guilty by reason of insanity.

- 2 -

In response to the jury's verdict, the district court ordered an evaluation of Mr. Livesay's mental condition. After receiving that evaluation, the court held a hearing at which it heard testimony from the evaluating psychiatrist, Kwanna Williamson. She testified that Mr. Livesay was suffering from bipolar disorder. While he was not currently exhibiting "active signs of mania or psychosis or depression" because he was receiving treatment for his mental illness, Dr. Williamson testified that, if this treatment were to end, "there is a high likelihood that [Mr. Livesay's] symptoms could resurface and he would potentially be violent." App. at 132-133. For this reason, Dr. Williamson did "not feel comfortable" recommending unconditional release; she believed that, if Mr. Livesay were "left to his own volition, there is a high likelihood that he might become noncompliant" with his treatment. App. at 133-34. Indeed, Dr. Williamson testified that Mr. Livesay needed a supervised environment.

Following this hearing, the district court held two more hearings aimed at exploring the possibility of conditionally releasing Mr. Livesay to the Sugar Mountain Retreat, where he had resided prior to trial. Ultimately, however, the court seemed to reject that possibility for two reasons. First, it expressed "serious concerns" that the Sugar Mountain facility was not capable of doing enough to "ensure the safety of . . . the public" from Mr. Livesay's dangerous tendencies. App. at 31. Second, the court suggested that, even if it wanted to conditionally release Mr. Livesay to Sugar Mountain, it lacked statutory authority to do so

- 3 -

because "the defendant ha[d] failed to meet his burden of proving by clear and convincing evidence that his release would not 'create a substantial risk of bodily injury to another person or serious damage of property of another due to a present mental disease or defect,'" as required by 18 U.S.C. § 4243(d).   App. at 31-32.  In the end, and apparently for both these reasons, the district court ordered Mr. Livesay committed to the custody of the Attorney General.  App. at 32.  It is this disposition that Mr. Livesay seeks to undo before us.

* * *

We begin with what isn't in dispute, which in this appeal turns out to be quite a lot.  Mr. Livesay does not dispute that, after his acquittal, the district court was statutorily obliged under 18 U.S.C. § 4243(b) to order a psychiatric evaluation of his mental condition.  He does not dispute that the district court then had to hold a hearing within 40 days of his acquittal to assess that evaluation and consider the suitability of his release.  18 U.S.C. § 4343(c).[1]  Mr. Livesay agrees that, at such a hearing, 18 U.S.C. § 4243(d) placed upon him the burden of "proving by clear and convincing evidence that his release would not create a substantial risk of bodily injury to another person or serious damage of property of another due to a present

---

[1]  In fact, the district court held a number of hearings before it committed Mr. Livesay to the custody of the Attorney General, and Mr. Livesay does not challenge the timeliness of any of these.

- 4 -

mental disease or defect."[2] Mr. Livesay concedes that he failed to carry this burden. And Mr. Livesay raises no constitutional challenge to any aspect of Congress's statutory regime.

So, what exactly remains for us to decide? Mr. Livesay argues that, though he wasn't a suitable candidate for unconditional release, the district court should have ordered his release subject to the condition that he return to the residential treatment program at Sugar Mountain, or to some similar program. We cannot agree. As we read the law, the district court was correct when it concluded that it was not statutorily authorized to afford Mr. Livesay a conditional release, even if it wished to do so.

That this is so is suggested, in the first instance, by the plain language of 18 U.S.C. § 4243(e). Subsection (e) provides that if the court "fails to find" that the insanity acquittee met the burden of proving that his release would not pose a substantial risk to others, the "court *shall* commit the person to the custody of the Attorney General." (emphasis added). This language appears mandatory, not permissive, in its direction to the district court. *See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998) ("[T]he mandatory 'shall' . . . normally creates an obligation impervious to judicial discretion."). So it seems the

---

[2] This burden applies to those acquitted of offenses "involving bodily injury to, or serious damage to the property of, another person, or involving a substantial risk of such injury or damage," while a lighter (preponderance of the evidence) burden pertains to those acquitted of "any other offense." 18 U.S.C. § 4243(d).

court had but two statutorily authorized options to choose from: either unconditionally release Mr. Livesay or commit him to the Attorney General's care. *See United States v. Baker*, 155 F.3d 392, 395 (4th Cir. 1998) (holding that § 4243(e) "directs the court to commit the insanity acquittee to the custody of the Attorney General should he fail to meet the burden required to justify release [under § 4243(d)]"); *United States v. Stewart*, 452 F.3d 266, 270 n.5 (3d Cir. 2006) (same). Conditional release, to Sugar Mountain or otherwise, wasn't an option.

Confirming this reading of the statute is the fact that elsewhere in the statute Congress demonstrated its awareness, and concern with the possibility, of conditional release. In the very next subsection, subsection (f), Congress provided that "[w]hen the director of the facility in which an acquitted person is hospitalized pursuant to [§ 4243(e)] determines that the . . . [person's] conditional release . . . would no longer create a substantial risk of bodily injury to another person or serious damage to property of another," the director must alert the district court that ordered the commitment. 18 U.S.C. § 4243(f). A hearing may then be held and conditions for release may be embodied in a judicial order. *Id.* Subsection (e)(2) likewise discusses the possibility of a "conditional release under a prescribed regimen" *after* the insanity acquittee has been committed to the Attorney General's custody. 18 U.S.C. § 4243(e)(2); *see also Baker*, 155 F.3d at 395 n.*. The fact that Congress expressly contemplated the possibility of post-commitment conditional release in subsections (e)(2) and (f) is strong evidence that its failure to

provide a mechanism for pre-commitment conditional release in an adjacent subsection wasn't accidental, but deliberate. As the Supreme Court has explained, "where Congress includes particular language in one section of a statute but omits it in another . . . , it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) (internal quotations omitted).

Neither is the existence of a post-commitment conditional release mechanism and the absence of a corresponding pre-commitment conditional release mechanism insensible or absurd. It is understandable why Congress might have wished to allow for conditional release only *after* an insanity acquittee has been committed to custody under § 4243(e). When a district court holds its § 4243(c) hearing to consider whether to release or commit an insanity acquittee, it must do so within 40 days after acquittal and thus the court has relatively limited information about the acquittee's mental state. By contrast, once an acquittee has been committed to the custody of the Attorney General pursuant to § 4243(e), the director of the treatment facility will have "the benefit of far more extensive observation and evaluation of the [acquittee's] mental state," and, accordingly, should be in a significantly better position to assess whether and what conditions might permit the acquittee's safe release. *Baker*, 155 F.3d at 396.

It is notable, too, that as part of its comprehensive statutory regime, Congress has provided mechanisms to ensure judicial review of the treatment

facility director's evaluations and to provide insanity acquittees with regular opportunities to challenge their continued commitment. Not only may a treatment facility director recommend the insanity acquittee's release at any time to the district court, he must also provide periodic reports to the court regarding the acquittee's mental condition and in those reports provide recommendations on whether or not commitment remains necessary. *See* 18 U.S.C. § 4247(e)(1)(B). Meanwhile, regardless whether the treatment facility director recommends release, counsel for the acquittee or his legal guardian may petition the court for his discharge at routine intervals. *Id* § 4247(h). If the court holds a hearing on the petition, Congress has indicated that the insanity acquittee has a right to counsel and must be given the opportunity to testify, to present evidence, and to confront and cross-examine witnesses at the hearing. *Id* § 4247(d). In addition to all this, Congress has stressed that nothing in § 4243 precludes a committed insanity acquittee from establishing the illegality of his detention by writ of habeas corpus. 18 U.S.C. § 4247(g).

Simply put, the district court did not err in declining to order a pre-commitment conditional release following Mr. Livesay's § 4243(c) hearing. Under the comprehensive statutory regime Congress has prescribed for the treatment of insanity acquittees, that wasn't an option. At that time, the district court could only release Mr. Livesay unconditionally or commit him. Because Mr. Livesay concedes that he failed to qualify for unconditional release, it follows that the

district court's commitment order was not only lawful but unavoidable. Of course, none of this is to say Mr. Livesay can never receive a conditional release. Far from it. It is to say only that conditional release is a post-commitment, not pre-commitment, possibility under the statute Congress has drawn.

Mr. Livesay raises a separate but related argument that he was excluded from hearings conducted by the district court on April 3 and 4 and May 13 and 14, 2009, in contravention of his constitutional due process rights. But even a criminal defendant's right to be present doesn't extend as far as situations where his "presence would be useless, or the benefit but a shadow," *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987) (quotation marks omitted), and that is precisely what Mr. Livesay's presence at these hearings would have been. Mr. Livesay acknowledges that the April hearings concerned only logistical (*e.g.*, scheduling) issues, and he does not indicate any purpose his presence could have served. Mr. Livesay further acknowledges that the district court's May hearings were focused only on the possibility of ordering his pre-commitment conditional release to Sugar Mountain Retreat or elsewhere. Yet, as the district court itself ultimately seemed to conclude, and we now affirm, the district court at no point possessed the statutory authority to afford Mr. Livesay a pre-commitment conditional release. Nothing in Mr. Livesay's presence at the May hearings could have changed this implacable

statutory fact.  As a matter of law, then, his attendance could have benefitted him no more than "but a shadow."[3]

* * *

The district court's judgment is

*Affirmed.*

---

[3] Because we affirm the district court's judgment, Mr. Livesay's separate request that any proceedings we might order on remand take place before a different district judge is moot.