# United States Court of Appeals
## For the First Circuit

---

No. 23-1684

UNITED STATES OF AMERICA,

Appellee,

v.

JOHN CHARLES VOLUNGUS,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U.S. District Judge]

---

Before

Gelpí, Thompson, and Rikelman,
Circuit Judges.

---

Ian Gold for appellant.
Michael L. Fitzgerald, Assistant United States Attorney, with
whom Joshua S. Levy, Acting United States Attorney, was on brief,
for appellee.

---

April 15, 2025

---

**THOMPSON, <u>Circuit Judge</u>.**

### Opening

John Volungus is a "real-life pedophile" (*his* words). And a convicted one at that. Other opinions — <u>United States</u> v. <u>Volungus</u>, 730 F.3d 40 (1st Cir. 2013), and <u>United States</u> v. <u>Volungus</u>, 595 F.3d 1 (1st Cir. 2010), to name only two — cover the sordid details of his crimes. Assuming the reader's familiarity with them — and after debunking the government's claim that his latest appeal isn't properly before us — we reject his attacks on an order conditionally releasing him from civil commitment under the Adam Walsh Child Protection and Safety Act of 2006 (often just the "Adam Walsh Act" or the "Act" from now on, to save keystrokes).

### How Volungus Got Here (Again)

The Adam Walsh Act is one of the more complex statutes in the U.S. Code. Placed in Chapter 313 of Title 18 — dealing with "Offenders with Mental Disease or Defect" — the Act is a "modest" add-on "to a set of federal prison-related mental-health" laws "that have existed for many decades." <u>See</u> <u>United States</u> v. <u>Comstock</u>, 560 U.S. 126, 137 (2010). Most basically the Act lets the feds seek court-ordered involuntary civil commitment of mentally ill "sexually dangerous person[s]" already in federal custody, even if they're finishing sentences after criminal convictions. <u>See</u> 18 U.S.C. § 4248; <u>see also</u> <u>Comstock</u>, 560 U.S. at

- 2 -

129.[1]  And once committed they're confined to a treatment facility until the facility's director or a court finds them no longer sexually dangerous or not sexually dangerous if released under a prescribed "medical, psychiatric, or psychological" treatment regimen.  See 18 U.S.C. §§ 4247(h), 4248(e).[2]

Sent to federal prison in 1999 for child-sex crimes (enticement and possessing child pornography) Volungus did his time but broke conditions of his supervised release in 2005 and so landed back behind bars.  In 2006 (before his second jail stint ended) the government moved to civilly confine him, arguing that he remained sexually dangerous and couldn't be safely released into the community.  In 2012 (lots happened in between, but nothing

---

[1] The "statute" — to quote the Supreme Court quoting parts of the Act — "allows" a district judge

> to order the civil commitment of an individual who is currently "in the custody of the [Federal] Bureau of Prisons," § 4248, if that individual (1) has previously "engaged or attempted to engage in sexually violent conduct or child molestation," (2) currently "suffers from a serious mental illness, abnormality, or disorder," and (3) "as a result of" that mental illness, abnormality, or disorder is "sexually dangerous to others," in that "he would have serious difficulty in refraining from sexually violent conduct or child molestation if released," §§ 4247(a)(5)-(6).

Comstock, 560 U.S. at 130.

[2] Section 4248(e) plays a starring role in our opinion, by the way.

worth noting) the district judge sided with the government and ordered him civilly committed to the custody of the federal bureau of prisons.

And there Volungus stayed until 2022. That year the facility's warden certified that Volungus wouldn't "be sexually dangerous . . . if released under . . . the prescribed regimen of medical, psychiatric, or psychological care or treatment that has been prepared for [him]."[3] The government then proposed an order conditionally releasing him under "specific conditions and [the] prescribed regimen of medical, psychiatric, or psychological care or treatment."[4] Volungus got the judge to let him "provisionally agree" to the suggested order (so he could move to a halfway house ASAP) while reserving "objections" to the court's power "to impose such conditions" once the judge imposed them. And the judge eventually ordered him "conditionally released under the following *specific conditions* <u>*and*</u> *prescribed regimen* of medical, psychiatric, or psychological care or treatment" as recommended by the government (emphases ours) — more on that language in a bit.[5]

_____

[3] We see no prescribed regimen attached to or included with the certificate in Volungus's appendix. His lawyer, however, told us at oral argument that "there's no special document" out there "that specifically says this was the warden's treatment regimen."

[4] The government actually filed two proposed orders. But we focus on the only one that matters.

[5] One can view the conditional-release order on the district court docket. See Order of Conditional Release, No. 07-12060-GAO

Spanning 17 pages, the judge's conditional-release order has a bunch of "shall[s]" (conditions 1-27), "shall not[s]" (conditions 28-42), and "understandings" and "acknowledgments" (paragraphs 43-46).

A couple months later — still in 2022 — Volungus filed his "objections" to that order by the deadline the judge had set if he "want[ed] to argue" against "any of the conditions." Claiming that conditions 6, 7, 8, 9, and 19 — and *only* those conditions — "constitute the regimen of treatment and care," he asked the judge to "vacate" every other condition.[6] The offending conditions can't stand — he continued, citing an Eleventh Circuit case and quoting § 4248(e) — because (to him) the judge had exceeded statutory limits by "requir[ing] him to do more than

_____

(D. Mass. June 27, 2022), ECF No. 158. The order doesn't say who had input into it (perhaps a psychiatrist?). But Volungus makes nothing of that.

[6] Some of the five identified conditions are longish. We hit the highlights. Condition 6 says that Volungus shall participate in sex-offender "treatment and support services." Condition 7 says that he shall "[f]ollow the rules, regulations, and clinical recommendations of [his] sex offender treatment program." Condition 8 says that he shall "[s]ubmit to a polygraph, computerized voice stress analyzer, or other similar device to obtain information necessary for supervision, case monitoring, and treatment." Condition 9 says that he shall "[p]articipate in a regimen of outpatient mental health care." And condition 19 says that he shall "[w]aive any confidentiality and sign releases of information so that treatment providers, supervision officers, polygraph examiners, and others (as necessary) can communicate openly about his case and release conditions."

- 5 -

'comply with' a 'prescribed regimen of medical, psychiatric, or psychological care or treatment.'"  But that isn't all.  He also opposed conditions 9, 10, 23, 24, 27(d), and 41(b) because (in his view) the judge lacked "inherent, statutory, or other authority" to force him to pay some or all of the costs tied to his release conditions.[7]  His papers teed up a legal question, to be clear.

The government's 2023 response argued — touting Seventh, Eighth, and Ninth Circuit cases — that judges can order release conditions "beyond a prescribed regimen of care or treatment to ensure that the conditions of release adequately provide for the safety of the general public."  And the government defended the pay-all-or-some-costs requirements because (as it saw things) Volungus was "an offender subject to supervision by [p]robation" and so could "be properly required" to make payments "associated with" the court-ordered "treatment programs and services."

With his objections still pending the government — also in 2023 — moved to revoke Volungus's conditional release, alleging that he had broken conditions 41 and 42 of the conditional-release

---

[7] Conditions 9 and 10 basically require Volungus to pay "all or part of the cost of treatment program and services."  Condition 23 requires him to pay "all or part of the cost" of location-monitoring technology.  Condition 24 requires him to pay "all, or a portion of, the costs of" regular and random substance-abuse testing.  And conditions 27(d) and 41(b) require him to pay "all or part of the cost of" installing and running computer-monitoring software.  At least that's their gist.

order by watching "adult pornography" on a "smartphone" that he had unauthorizedly possessed.[8]  The government asked (among other things) for a court hearing to see if Volungus "should be remanded to a suitable facility on the ground that he is sexually dangerous."[9]  Volungus moved to dismiss the government's revocation motion, arguing — while quoting the Adam Walsh Act — that he hadn't "'failed to comply' with any 'prescribed regimen of medical, psychiatric, or psychological care or treatment'" but instead stood accused of breaking "condition[s] unrelated to treatment . . . and to which he has lodged objections."

Both sides' lawyers spoke directly to the judge at a 2023 hearing to consider Volungus's objections to the conditional-release order (left pending for about a year) *and* his motion to dismiss the revocation proceedings.  There — to highlight some of the topics covered — Volungus's lawyer said that he "view[ed] the

---

[8] Condition 41 says that Volungus shall not "[o]wn and operate any personal computer or other electronic device (e.g., cell phone, laptop, tablet, gaming system, etc.) with Internet access or photo/video capabilities, unless previously approved by U.S. Probation."  And condition 42 says that he shall not "[p]ossess, view, or otherwise use any form of pornography."  That's the essence of them at any rate.

[9] Captioned "Motion for Revocation of Conditional Release" (bolding omitted and capitalization of words altered) the government's motion relied on 18 U.S.C. § 4248(f) — which provides for revocation of conditional release if the judge finds that the releasee failed "to comply with the prescribed regimen of medical, psychiatric, or psychological care or treatment" and that as a result he "is sexually dangerous to others."

purpose of th[at] proceeding as twofold": to get "a ruling on . . . what we've styled as 'objections to the [conditional-release] order,' but [is] essentially a motion asking the [c]ourt to vacate all conditions . . . not part of the regimen of care and treatment"; and to get the revocation matter "dismiss[ed]."

Volungus struck out, however. Near the hearing's end the judge said (among other things) that he considered the prevailing circuit view to be on the money — it jibes nicely with "the broader purposes of th[e] statutory scheme," he stressed — and so "denied" the "objections." That same day the judge issued an electronic order "den[ying]" Volungus's "[o]bjections" to the conditional-release order (after "interpret[ing]" the objection as a "motion," without saying what *kind* of "motion" the judge thought it was), *and* "den[ying]" his "[m]otion to [d]ismiss" the government's revocation bid.

Around this time — again in 2023 — the government filed a second motion to revoke Volungus's supervised release (that still-pending motion remains under seal below and isn't part of any appendix here so we don't know the basis for it). The government withdrew its first revocation request, stating that the parties had "reached an agreement to resolve the revocation process

without the need for further litigation."[10]  Volungus then filed a notice of appeal, listing the ruling "treating as a motion and denying" his objection to the conditional-release order as the one he's appealing.

Which brings us to the present.  Volungus repeats his belief that the Adam Walsh Act didn't allow the judge to give him "conditions other than compliance with the prescribed treatment regimen" or to compel him "to pay a portion of the cost of his own treatment and his own monitoring."  The government responds that we lack jurisdiction over his appeal and (alternatively) repeats its view that his arguments don't hold up.

## Jurisdiction Challenge

We start with the government's no-jurisdiction claim, something we must do as a court of limited review.  See, e.g., United States v. Sastrom, 96 F.4th 33, 37 (1st Cir. 2024).  The argument seems to run like this.  (*i*) The general appellate-jurisdiction statute — 28 U.S.C. § 1291, which Volungus leans on — gives circuit courts jurisdiction over "all final decisions" of district courts.  (*ii*) Usually that means a party must wait for a

---

[10] Anyone wondering about Volungus's custody status:  the parties' joint status reports — filed in 2024 — say that he "arrived at" a federal facility "for an evaluation pursuant to 18 U.S.C. § 4247(b)" and that the bureau of prisons was "coordinating" with the federal marshals service to bring him "to the District of Massachusetts."  That's all the info we have now.

"final judgment" ending the case before appealing. See Mohawk Indus. v. Carpenter, 558 U.S. 100, 106 (2009). (*iii*) Which explains why a denial of a motion to dismiss — a ruling that keeps the case going — usually isn't an appealable final decision. See Posada v. Cultural Care, Inc., 66 F.4th 348, 353 (1st Cir. 2023). (*iv*) Volungus "seeks review" of the judge's order "denying his motion to dismiss" the government's first revocation request. (*v*) So — and because no exception applies (the word "usually" used in romanettes (*ii*) and (*iii*) indicates exceptions exist) — "the [c]ourt" should toss his "appeal for lack of jurisdiction."

The government's theory rises or falls on the idea that Volungus appealed from the denial of his motion to dismiss. The theory falls. And for a simple reason. A notice of appeal (to back up a moment) "must" specify "the judgment — or the appealable order — from which the appeal is taken." Fed. R. App. P. 3(c)(1)(B). Volungus directed his notice *only* to that part of the electronic order "treating as a motion and denying" his "[o]bjections" to the conditional-release order. His notice *didn't* target the piece denying his motion to dismiss the first revocation proceeding. And that makes sense: he couldn't have appealed that portion — denying his request to dismiss the first revocation matter — because the government had *withdrawn* its first revocation motion *before* he filed his notice of appeal. Don't

- 10 -

forget either that the government's withdrawal notice said — with no ifs, ands, or buts — that the two sides had "reached an agreement to resolve the revocation process *without the need for further litigation*" (emphasis added).[11]   Anyway the government cites no case — nor can we find one — holding that we lack jurisdiction in this situation.[12]

## Merits Challenge

On then to the merits issues, involving (as said above) Volungus's belief that the judge slipped twice — first by making him follow conditions not part of the "prescribed regimen of medical, psychiatric, or psychological care or treatment," and then by making him cover treatment and monitoring costs.  Because

---

[11] The government's lawyer suggested at oral argument here that perhaps the judge "construed" Volungus's "objections" to the conditional-release order "as part and parcel of the motion to dismiss" when he (the judge) denied it, thus "rendering it" the kind of order "over which this court will lack appellate jurisdiction."  But all we need to say is that the government waived this theory by waiting until oral argument to make it.  See, e.g., United States v. Calderon-Zayas, 102 F.4th 28, 37 n.9 (1st Cir. 2024).

[12] One last note on the appellate-jurisdiction issue.  The government spends pages discussing how "Volungus's inability to appeal the district court's order does not leave him without recourse":  if the judge finds that he broke "certain conditions of his release and consequently order[s] him re-detained" — the government says — he'd "have standing to challenge" those conditions but *not* "any other conditions of release."  But having already rejected the premise of this argument — that Volungus is appealing from an unappealable order denying his motion to dismiss — we needn't wrestle with the government's standing-related contentions.

- 11 -

these topics involve legal questions our review is *de novo*, see, e.g., United States v. Carta, 592 F.3d 34, 39 (1st Cir. 2010) — with no deference given to the judge, see, e.g., DraftKings Inc. v. Hermalyn, 118 F.4th 416, 419 (1st Cir. 2024); Berge v. Sch. Comm. of Gloucester, 107 F.4th 33, 39 n.8 (1st Cir. 2024).

*Conditions*

First up is Volungus's claim that the Adam Walsh Act doesn't let judges hit releasees with conditions beyond the prescribed treatment regimen. He (remember) believes that only conditions 6, 7, 8, 9, and 19 (touched on in our footnote 6) "constitute the regimen of treatment and care" and so (consistent with this theory) asks us to "vacate" the remaining conditions — which (again) he insists can't "be fairly characterized as a treatment regimen."[13]

One circuit (as of today) — the Eleventh, United States v. Crape, 603 F.3d 1237 (11th Cir. 2010) — clearly supports

---

[13] This is as good a place as any to straighten something out. The government — unlike Volungus — thinks that *every single one* of the judge-imposed conditions "were part of [the] prescribed regimen of treatment." But the document the parties tell us to look at — the government's proposed conditional-release order (which the judge adopted) — says that it includes "the following specific conditions *and* prescribed regimen of medical, psychiatric, or psychological care or treatment" (emphasis added), meaning some conditions *are* treatment-related and some *aren't* (the government offers no persuasive reason why we can't so conclude given the order's text).

Volungus's position.  Three others (as of this moment) — the Seventh, United States v. Jain, 174 F.3d 892 (7th Cir. 1999); the Eighth, United States v. Franklin, 435 F.3d 885 (8th Cir. 2006); and the Ninth, United States v. Phelps, 283 F.3d 1176 (9th Cir. 2002) — clearly don't.  While another three (as we write) — the Fourth, United States v. Perkins, 67 F.4th 583 (4th Cir. 2023); the Sixth, United States v. Williams, 70 F.4th 359 (6th Cir. 2023); and the Tenth, United States v. Livesay, 600 F.3d 1248 (10th Cir. 2010) — could be read as embracing the prevailing circuit view ("could be read," because they have broad language that might be thought to imply an embrace — even though the precise issue wasn't before them).[14]

We now join the majority of circuits that allow nontreatment conditions in similar situations, though we get there by a slightly different route.[15]  Explaining the hows and whys of our decision takes a little doing.  So please bear with us.

---

[14] The parties agree (or at least don't dispute) that the key out-of-circuit cases cited in this paragraph involve — "for *all* purposes relevant" to Volungus's appeal — "discharge provisions [that] *mirror*" the Adam Walsh Act's "discharge provision" (emphases added).  Please keep that in mind whenever we cite or discuss them again (though we won't be shy about offering reminders here and there).

[15] Another First Circuit appellant recently relied on the Eleventh Circuit's Crape opinion to argue that judges have no statutory "authority *at all* to impose conditions of release that are not treatment conditions."  See Reply Brief of Appellant at 11, United States v. Hunt, 21 F.4th 36 (1st Cir. 2021) (No. 20-

1

We begin where we should, "with the text" of the part of the Adam Walsh Act that Volungus centers his argument around — § 4248(e).  See Ross v. Blake, 578 U.S. 632, 638 (2016).  That section pertinently says that a judge conditionally releasing a person must "order, as *an* explicit condition of release, that he comply with the prescribed regimen of medical, psychiatric, or psychological care or treatment."  See § 4248(e)(2)(B) (emphasis added).  But it neither specifically permits nor expressly forbids the adding of nontreatment conditions.

Volungus (for his part) reads the at-issue text as letting the judge "condition" a person's "release" *only* "on compliance with the regimen" — and so doesn't allow "the imposition of other [nontreatment] conditions."  And he relies on Crape, the one case in the minority-circuit-view camp.  Crape dealt with a § 4248(e) sister statute, § 4243(f), see 603 F.3d at 1243-44 — which both use the *same* words in addressing when a judge must "order, as *an* explicit condition of release, that [the person] comply with the prescribed regimen of medical, psychiatric, or psychological care or treatment," see § 4243(f)(2)(B) (emphasis added); § 4248(e)(2)(B) (emphasis added).  Crape held that that

---

1009).  But we left that question open (for reasons we needn't get into here).  See Hunt, 21 F.4th at 43-44.

phrasing didn't let judges order release conditions beyond the prescribed treatment regimen. See 603 F.3d at 1243-44. And in doing so Crape rejected the idea that the italicized word "an" suggests "a wide-ranging authority to impose additional, unspecified conditions on [a person's] discharge": Congress (Crape assumed) must've used "an" rather than "the" to sidestep "the ungainly construction that would result from" using "the" instead "(*e.g.,* 'the court shall order, as *the* explicit condition of release . . .')" and to avoid "inaptly suggest[ing] the possibility of inexplicit conditions on [the person's] discharge." See id. at 1244. That's precisely what Volungus asks us to hold.

The government (for its part) reads the at-issue text exactly the opposite, relying on cases in the prevailing-circuit-view camp. Those cases dealt with a § 4248(e) sister statute, either § 4243(f) or § 4246(e) — which all use the same terms in saying when a judge must "order, as *an* explicit condition of release, that [the person] comply with the prescribed regimen of medical, psychiatric, or psychological care or treatment," see § 4243(f)(2)(B) (emphasis added); § 4246(e)(2)(B) (emphasis added); § 4248(e)(2)(B) (emphasis added). See Jain, 174 F.3d at 898-99; Phelps, 283 F.3d at 1184-87; Franklin, 435 F.3d at 888-90. See generally Comstock, 560 U.S. at 142-43 (noting that "[a]side from its specific focus on sexually dangerous persons,

- 15 -

§ 4248 [(passed in 2006)] is similar to the provisions" of §§ 4243 and 4246 "first enacted in 1949").  And the government favors these cases because they read "an" as signaling that "*other* conditions may be imposed *as well*" — with an important caveat (discussed below) that the "*other* conditions" relate to the releasee's mental illness and the public's safety.  See Jain, 174 F.3d at 898, 899 (emphases added); see also Franklin, 435 F.3d at 889; Phelps, 283 F.3d at 1186.

We (for our part) know that the presence of different-yet-reasonable interpretations (like here) is the very definition of ambiguity.  See, e.g., Smiley v. Citibank (S.D.), N.A., 517 U.S. 735, 739 (1996) (concluding that the courts' contrasting interpretations of a statute made it hard to say "that the [provision] is unambiguous with regard to the point at issue").  So we'll next try to decode Congress's work by assessing these readings in light of the statute's reason for being.  See, e.g., Concrete Pipe & Prods., Inc. v. Constr. Laborers Pension Trust, 508 U.S. 602, 627 (1993).

2

A core purpose of the Adam Walsh Act is to protect people from persons with mental maladies that make them sexually

- 16 -

dangerous.  See Comstock, 560 U.S. at 139-43.[16]  See also generally United States v. Wetmore, 700 F.3d 570, 580 (1st Cir. 2012) (observing that the Act "turns on present *dangerousness*" (emphasis added)); United States v. S.A., 129 F.3d 995, 999 (8th Cir. 1997) (stating that statutes like the Act are "intended to provide a *safeguard to the general public* and to ensure that mentally ill and dangerous individuals receive proper treatment" (emphasis added)).  "The basic inquiry" a judge makes "*throughout* . . . is whether" the person's release "would create a substantial risk of *bodily injury* to . . . another — briefly put, whether the public needs *protection* from the *danger* posed by the person's mental illness."  See Jain, 174 F.3d at 898 (emphases added).  And given this "'awesome responsibility'" a judge "generally" has "great latitude when determining whether a mentally ill [person] is ready to be released and under what conditions" — all (it needs emphasizing) to advance the Act's overarching public-safety purpose.  See id. (quoting parenthetically United States v. Clark, 893 F.2d 1277, 1282 (11th Cir. 1990)); see also Phelps, 283 F.3d at 1185-87.  Volungus's "crabbed" reading of the at-issue text *subverts* that purpose.  See Jain, 174 F.3d at 898; see also Phelps,

_____

[16] The Eleventh Circuit decided Crape (the out-of-circuit opinion Volungus asks us to follow) *before* the Supreme Court decided Comstock.  We'll mention Crape's timing again in another part of this opinion.

- 17 -

283 F.3d at 1186-87.  The government's — which aligns with the prevailing circuit view — *furthers* it.  See Phelps, 283 F.3d at 1186-87; Jain, 174 F.3d at 898.  So we must adopt the government's over his.  See Phelps, 283 F.3d at 1186-87; Jain, 174 F.3d at 898.

3

Cinching matters is this.  Courts presume that Congress knows the prevailing law (including caselaw) when it enacts a statute.  See, e.g., Mississippi ex rel. Hood v. AU Optronics Corp., 571 U.S. 161, 169 (2014); Merck & Co. v. Reynolds, 559 U.S. 633, 648 (2010).  Congress enacted the Adam Walsh Act in 2006, decades after "first enact[ing]" §§ 4243 and 4246 in 1949.  See Comstock, 560 U.S. at 142-43.  By then several circuits had already held that § 4248(e)'s older-sister statutes — which (again) also use "an" in discussing when a judge must "order, as *an* explicit of release, that [the person] comply with the prescribed [treatment] regimen" — let judges order *non*treatment conditions too.  See Jain, 174 F.3d at 898; see also Franklin, 435 F.3d at 889; Phelps, 283 F.3d at 1186.  And no circuit had gone the other way (the contrary Crape opinion came four years *after* the Act's enactment).  Congress could've easily drafted § 4248(e) in such a way as to ban judges from ordering other conditions.[17]  But Congress didn't, opting

---

[17] To state the obvious (because sometimes the obvious needs stating):  Congress could've said judges can "order, as **the sole** condition of release, that the [person] comply with the prescribed

- 18 -

instead to copy into § 4248(e) lingo from related statutes that courts had already read as allowing additional conditions. So (in other words, and devastating to Volungus) we can assume Congress accepted the prevailing circuit view — or at least wasn't obviously put off by it. See, e.g., Cannon v. Univ. of Chi., 441 U.S. 677, 696-98 (1979) (presuming that Congress knew about the prior interpretation courts gave to statutory language that legislators then dropped into a different statute); Northcross v. Bd. of Educ. of Memphis City Schs., 412 U.S. 427, 428 (1973) (per curiam) (affirming that when Congress uses the same kind of statutory language in different provisions having the same general purpose, courts can presume that Congress wants the same interpretation to apply).

4

Volungus (perhaps anticipating this outcome) makes some counterarguments, hoping to turn defeat into victory. None succeeds.

---

regimen of medical, psychiatric, or psychological care or treatment." Or it could've said judges **"shall not impose any conditions of release other than compliance** with the prescribed regimen of medical, psychiatric, or psychological care or treatment." Or it could've said judges can order a person's release **"subject only to his compliance** with the prescribed regimen of medical, psychiatric, or psychological care or treatment." The possibilities seem endless.

a

Volungus keeps pushing us to follow Crape.  And we get why, given Crape's holding that judges *can't* order nontreatment conditions under § 4243(f).  But Crape's § 4243(f) focus means the court there (unlike us here) didn't have to account for Congress's accepting the contrary prevailing circuit view (that judges *can* order nontreatment conditions under §§ 4243(f) and 4246(e)) when it enacted § 4248(e) — a law that's the spitting image of the ones behind the prevailing circuit view (as we've been at pains to stress).  So regardless of how well-reasoned Crape may be it's not the silver bullet he imagines.

b

Volungus then mixes and matches several theories, looking for a winning one.  He writes (for instance) that since § 4248(e) "is part of a statutory regime" for persons "confined only because they are dangerous due to" certain "mental" conditions, "it follows that treatment of the dangerousness producing mental condition would be the central preoccupation of the release provision[]."  He also adds (emphasis his) that since probation officers must, "when directed by the court, and *to the degree required by the regimen of care or treatment ordered by the court as a condition of release*, keep informed as to the conduct and provide supervision of a" conditionally released person, see

18 U.S.C. § 3603(8)(A), Congress (to quote his brief) must've "envisioned" a "limited range of possible conditions that a [judge] could impose." And he claims that since § 4248(f) provides for revocation of a conditional discharge if the court finds the releasee broke "the prescribed" treatment regimen, a judge has no authority to order any conditions outside that regime. But — and it's a very big but — his theories (though forcefully presented) can't parry our much-emphasized point that Congress accepted the prevailing circuit view (the *opposite* of the one he champions) when it passed § 4248(e).[18]

c

Volungus also hypes the rule that courts should interpret an unclear statute to avoid "*serious* doubt" (not just *any* doubt) about the act's unconstitutionality. See Crowell v. Benson, 285 U.S. 22, 62 (1932) (emphasis added); see also Jennings

---

[18] Consider this too. The provisions he relies on here — § 3603(8)(A), concerning probation officers' duties; and § 4248(f), concerning revocation — aren't unique to § 4248. Instead the same language also applies to § 4248's older-sister statutes, § 4243 and § 4246. See §§ 3603(8)(A) (directing probation officers, "to the degree required by the regimen of care or treatment ordered by the court as a condition of release," to "keep informed as to the conduct and provide supervision of a person conditionally released under the provisions of section 4243, 4246, or 4248 of this title"), 4243(g) (revocation-of-conditional-discharge provision), 4246(f) (revocation-of-conditional-discharge provision). So these provisions can't alter our analysis of the prevailing circuit view or its applicability to § 4248.

- 21 -

v. Rodriguez, 538 U.S. 281, 298 (2018). "Construing [§ 4248(e)] to permit" judges to order "conditions" that aren't "part of the 'treatment regimen'" and that "are . . . borrowed from criminal" supervised-release orders "of sex offenders" should make us "pause" — he says — given the "unbounded authority" the judge "assumed" here to shape conditions. But his unbounded-authority theory doesn't work either. A chief aim of the Adam Walsh Act is to protect people from persons with sexually dangerous proclivities arising from mental illness (a sort of cut-and-pasted line from above). See, e.g., Comstock, 560 U.S. at 139-43. And that purpose acts as a brake on the judge's power by requiring that extra conditions be "related" to "the mental illness in question" and "the potential risk to society." See Jain, 174 F.3d at 898 (holding "that a district court does not overstep its authority by establishing conditions of release relating to [the releasee's] dangerousness that are not specifically included in the 'prescribed regimen'"); see also Franklin, 435 F.3d at 889 (ruling "that a district court has the authority to impose conditions, in addition to a regimen of care or treatment, that are related to the mental [illness] and reasonably necessary to assure the safety of the community"); Phelps, 283 F.3d at 1186, 1187 (noting that "[t]he district court has the ultimate responsibility to determine whether this mentally ill person is

- 22 -

safe to release into the general public" and concluding that "if the district court can deny the release entirely, then the district court can also authorize other conditions to assure the safety of the general public and grant the release"). The net result is that our reading of § 4248(e) leaves us with no serious constitutional problem to avoid (despite what Volungus suggests).[19]

*Costs*

Second (and last) up is Volungus's argument that the judge couldn't order him to pay costs for certain release conditions — specifically, polygraph testing, location-monitoring technology, substance-abuse testing, and computer-monitoring technology.

Volungus agrees that judges can make probation-supervised "offender[s]" pay "fees" for these kinds of services, thanks to 18 U.S.C. § 3672 (the first quote is from the statute; the second is from his brief). He just thinks that § 3672 doesn't apply because "offenders" must be "interpreted" to "exclude" persons like him "who have been conditionally discharged from civil

---

[19] Volungus protests that the government can't use the Adam Walsh Act to "unconstitutionally extend criminal sentences that otherwise have expired." But he doesn't persuasively explain how conditions devised to help protect the public *and* ensure compliance with the treatment regimen do any such thing. See generally Addington v. Texas, 441 U.S. 418, 428 (1979) (noting that "[i]n a civil commitment [government] power is not exercised in a punitive sense").

commitments under the mental health statutes" and who "may not be offenders at all."  He seemingly overlooks two realities, however. One (recall) is that the Adam Walsh Act appears in a chapter of the U.S. Code called "*Offenders* with Mental Disease or Defect" (emphasis added) — the word "[o]ffender[]" is right there in the title (to state the obvious).  The other is that he is a "sex *offender*" (no one doubts — at least no one should doubt — that he is).  See Volungus, 730 F.3d at 43-44, 47, 49 (emphasis added). He grapples with neither point.  Instead he "pluck[s]" his argument "out of thin air . . . without any logical foundation or citation to persuasive authority."  See United States v. David, 940 F.2d 722, 739 n.10 (1st Cir. 1991).  Which makes his offender-based theory a nonstarter.

Volungus circles back to § 4248(e), writing that — even under the prevailing circuit view — judge-imposed conditions "must be directly related to" the treatment of his mental illness or his potential dangerousness.  And he then adds that because "the imposition of fees is related to neither, it is not authorized under the statute."  But he offers no legal reasoning or citations supporting his fees-aren't-related-to-treatment-or-safety idea and so waived it.  See, e.g., United States v. Cruz-Ramos, 987

F.3d 27, 43 (1st Cir. 2021); <u>Rezende</u> v. <u>Ocwen Loan Servicing, LLC</u>, 869 F.3d 40, 43 (1st Cir. 2017).[20]

## Final Words

We *affirm* the judge's conditional-release order.

---

[20] He also develops no argument explaining why — under the prevailing circuit view (adopted by us) — any of the *other* contested conditions aren't appropriately treatment- or safety-related.  So we needn't say how that argument would fare if he had.